MILLER *v.* FORT WAYNE MERCANTILE ACCIDENT ASSO-
CIATION.

[No. 12,495. Filed October 8, 1926. Rehearing denied May 27,
1927. Transfer denied June 22, 1928.]

*Fred H. Bowers, Milo N. Feightner* and *Lee M. Bowers,*
for appellant.

*Hoffman, Shoaff & Hoffman,* for appellee.

McMAHAN, P. J.—Action to recover on an accident
insurance certificate. Appellee by answer alleged that
the death of the insured resulted from a cause which was
excepted from the operation of the certificate, in that,
the insured died from the effects of accidentally swallow-
ing poison.

Appellee is a mutual accident association organized
to secure voluntary contributions to its members or to
designated beneficiaries in case of death by accidental
means. The deceased was concededly a member in
good standing at the time of his death. Appellant was
the beneficiary under the certificate. The death of the
insured resulted from accidentally swallowing carbolic
acid under the following circumstances: The insured,
being afflicted with a cold, procured some medicine.
At that time, his infant child was sick with typhoid
fever and under the care of a nurse who had procured a
bottle of carbolic acid to be used as an antiseptic. The

insured, intending to take a dose of the medicine, accidentally selected the wrong bottle and by mistake took some of the carbolic acid. The insurance certificate specifically excepted from its operation death from certain specified causes, including death from poison. This particular exception was set forth in the insurance certificate as follows: "It is also expressly understood and agreed that the Fort Wayne Mercantile Accident Association shall not be liable for death, nor disability, caused by, or resulting from . . . injury (fatal or otherwise) resulting from any poison, or infection, or from anything accidentally or otherwise taken, administered, or inhaled," etc.

The trial court overruled a demurrer to the answer and judgment was rendered against appellant that she take nothing; hence this appeal.

The particular object of the association, as stated in its articles of incorporation, was to collect a fund to be held for the mutual benefit and protection of its members (or their beneficiaries) who, while members, shall have sustained bodily injury, producing disability or death through or by external, violent and accidental means and under "such conditions, provisions, limitations, and exceptions as may be established under the constitution, rules and by-laws of the association."

The constitution of the association limited the membership to persons of certain named non-hazardous occupations. In order to become a member, an applicant was required to pay a membership fee of $1, and one assessment fee of $2, in advance, such assessment fee to be placed to the credit of the applicant, if admitted to membership, to pay the first assessment following his admission. Article V of the constitution provides that, on the death of a member by accident, an assessment of $2 shall be made on each member, and the amount of such assessment, not to exceed $5,000, paid to the

beneficiary of any member whose death resulted from an accident, and that a like assessment shall be made for injuries covered by §2, Art. VI of the constitution, Art. VI being headed: "Accidental Death Benefits." Section 1 of this article provides that whenever a member of the association shall, "through external, violent and accidental means alone, sustain bodily injuries, of which there are visible marks of injury, which shall, independently of all other causes, result in death" within ninety days thereafter, and on proof being duly made, an assessment of $2 on each member shall be made, and out of the amount so collected, the beneficiary of such member or his representatives shall be paid an amount not exceeding $5,000. Sections 2 and 3 relate to specific accident benefits and weekly indemnities allowed for certain named injuries.

Article VII is headed: "Rules Governing Payments of Benefits." Section 1 of this article exempts the association from liability in case of injuries, fatal or otherwise, resulting from a number of designated causes, among which are injuries arising from "voluntary or involuntary, conscious or unconscious inhalation of any gas, anaesthetic, fumes or vapor; from anything accidentally or otherwise taken, administered, absorbed or inhaled; . . . ."

Section 2 reads as follows: "The Association shall not be liable for death nor disability resulting directly or indirectly, wholly or in part from any of the following causes; sunstroke, freezing, . . . nor for death or disability caused directly or indirectly wholly or in part, from any poison . . . ."

The contention of appellant is that under the foregoing provisions of the certificate, "there must be a conscious taking of the poison to authorize denial of indemnity." The following authorities are cited in support of this contention: *Paul* v. *Travelers' Ins. Co.*

(1889), 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. 758; *Pickett* v. *Insurance Co.* (1890), 144 Pa. 79, 22 Atl. 871, 27 Am. St. 618, 13 L. R. A. 661; *Fidelity & Casualty Co.* v. *Waterman* (1896), 161 Ill. 632, 44 N. E. 283, 32 L. R. A. 654; *Lowenstein* v. *Fidelity & Casualty Co.* (1898), 88 Fed. 474, on appeal, 97 Fed. 17, 38 C. C. A. 29, 46 L. R. A. 450; *Menneiley* v. *Employers' Liability Assur. Corp.* (1896), 148 N. Y. 596, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. 716; *Travelers' Ins. Co.* v. *Ayers* (1905), 217 Ill. 390, 75 N. E. 506, 2 L. R. A. (N. S.) 168; *Travelers' Ins. Co.* v. *Dunlap* (1896), 160 Ill. 642, 43 N. E. 765, 52 Am. St. 355; *Metropolitan Accident Assn.* v. *Froiland* (1896), 161 Ill. 30, 43 N. E. 766, 52 Am. St. 359; *Dezell* v. *Fidelity & Casualty Co.* (1903), 176 Mo. 253, 75 S. W. 1102; *Miller* v. *Fidelity & Casualty Co.* (1899), 97 Fed. 836.

In the New York cases of *Paul* and *Menneiley*, the policy exempted the insurance company from liability on account of death "from inhaling gas." The exemption in the Pickett case was from "inhalation of gas"; in the Dunlap case, from "taking poison"; in the Waterman, Lowenstein, Miller and Dezell cases, "from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled"; in the Ayers case, for death "resulting wholly or partly, directly or indirectly . . . from gas or vapor." In the first six cases, death was caused by the unconscious inhalation of gas. In each of these cases, it was held that the words expressing the intention of the insurer not to be liable for death from inhaling gas meant a voluntary and intelligent act by the insured and not an involuntary and unconscious act.

In *Travelers' Ins. Co.* v. *Dunlap, supra*, the insured came to his death by taking carbolic acid in place of a medicine which he desired to take. Following the Paul case, it was held that the term "taking poison" meant

an "intelligent and conscious act." And in *Metropolitan Accident Assn.* v. *Froiland, supra,* the insured died from poison which he drank by accident, intending to drink distilled water. The insurer there contended there could be no recovery because the term "poison in any way taken" included poison accidentally taken as well as poison taken intentionally; that the qualifying words "in any way" related to the motive of the insured in taking the poison and embraced his involuntary as well as his voluntary action in that regard. The court, however, held the words "in any way" related to the mode or manner in which the poison was taken and not to the motive in taking it, and that the death having been caused by accident was not excluded from the risks covered by the contract of insurance.

In *Miller* v. *Fidelity & Casualty Co., supra,* the policy excepted "injuries fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled, . . . or any disease or bodily infirmity." A complaint alleging that the insured sustained bodily injury by swallowing hard, pointed and resistant food which, accidentally, by reason of the force and manner with which it came in contact with the intestinal tissue accidentally by reason of a weakened condition caused by an illness of which the insured had otherwise recovered, and of which weakened condition the insured had no knowledge, and so perforated the intestines as to cause death. The court simply held the complaint stated facts sufficient to show the death was accidental.

In the Dezell case, *supra,* death resulted from an overdose of morphine taken in good faith as a medicine prescribed by a physician to alleviate physical pain. It was held that the exception in the policy did not cover medicine even though it contained poison, taken or administered in good faith to alleviate physical pain.

We have examined many authorities in addition to those cited by appellant. In *Riley* v. *Interstate, etc., Assn.* (1918), 184 Iowa 1124, 169 N. W. 448, 2 A. L. R. 57, the provision was that there should be no liability "on account of disability or death resulting from poison voluntarily or involuntarily taken, administered, absorbed, or inhaled." Death was caused by taking medicine containing by mistake strychnine. Held there could be no recovery.

In *Early* v. *Standard Life, etc., Co.* (1897), 113 Mich. 58, 71 N. W. 500, 67 Am. St. 495, the insured, not feeling well, went to a drug store and asked the proprietor to give him something to relieve the pain, and the proprietor, by mistake, gave him some aqua ammonia. The insured died from the effect of the poison so taken. The policy exempted the company from liability for death caused "from . . . poison." In referring to the fact that the insured came to his death by poison, the court said:

"It was accidentally administered, supposing it to be another substance. This could not take the case out of the exception, but rather brings it within the exception. The great weight of authority is in favor of the proposition that it is not necessary that the poison be taken with intent to produce death, in order to defeat a claim flowing from the right of membership. . . . In *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472, 8 Am. St. 758, the court said: 'If the policy had said that it was not to extend to death caused wholly or in part by gas, it would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake.' We have not overlooked the cases of *Healey* v. *Mutual Accident Assn.*, 133 Ill. 556, 23 Am. St. 637; *Mutual Accident Assn.* v. *Tuggle*, 39 Ill. App. 509; and *Travelers' Ins. Co.* v. *Dunlap*, 160 Ill. 643, 52 Am. St. 355. But in the present case the expression is, 'death by poison.' We know of no case which goes to the

extent of holding that such an expression in the exception contained in the policy does not avoid it."

In *Maryland Casualty Co.* v. *Hudgins* (1903), 97 Texas 124, 76 S. W. 745, 104 Am. St. 857, 64 L. R. A. 349, 1 Ann. Cas. 252, the policy excepted "injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled." It was held there could be no recovery for injuries and death resulting from eating unsound and spoiled oysters not known to be such when eaten.

In *Jones* v. *Hawkeye, etc., Assn.* (1918), 184 Iowa 1299, 168 N. W. 305, 11 A. L. R. 380, the insurance contract provided that the association should not be liable for any "death, resulting wholly or in part from . . . gases . . . accidentally or otherwise taken, administered, absorbed, inserted, or inhaled." The court, after referring to the first six cases cited by appellant, refused to follow them, and held death resulting from the unconscious inhalation of gas while the insured was asleep was within the exception and not covered by the policy. Two judges dissented and, in the course of their opinion, said: "If the policy had said that the insurance thereby provided should not extend to or include any injury or death from poison or gas, which is what the insurer now argues, no one could well misunderstand it." See, also, *Hawkeye, etc., Assn.* v. *Christy* (1923), 294 Fed. 208, 40 A. L. R. 46.

In *Preferred Acc. Ins. Co.* v. *Robinson* (1903), 45 Fla. 525, 33 So. 1005, 61 L. R. A. 145, the policy provided that the insurance did not cover "injury, fatal or nonfatal, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled." While out riding, poison ivy was blown into the insured's eyes and caused them to become inflamed so as to incapacitate him for several weeks. It was there held that the injury having re-

sulted from poison, the company was not liable. After referring to the Paul case, the court said: "But even if the New York and other cases following it were sound law, the policy in litigation here seems to have been framed with a view to avoid the strained reasoning of the courts in those cases predicated upon the use of certain words and forms of expression in the policies therein considered. The policy in this case differs materially from the contracts construed in those cases."

In *Lowenstein* v. *Fidelity & Casualty Co., supra,* cited by appellant, the court followed the Paul case, and applied the rule there adopted as to the unconscious inhalation of gas by a person when asleep, but called attention to the Early Case, and to the fact that it was there held that the expression "death by poison" covered an accidental death caused by poison, under whatever circumstances or conditions taken, and, after quoting from the Paul case, the court said: "So it was properly held by the Michigan court that 'death by poison' included any and every manner of poison, whether intentionally or unintentionally, consciously or unconsciously taken."

The Robinson case is distinguished in *Dent* v. *Railway Mail Assn.* (1910), 183 Fed. 840, where death was caused by poison ivy, and where the policy provided there should be no liability where death resulted "from poison or other injurious matter taken or administered accidentally or otherwise." In analyzing the provisions exempting the insurer from liability, attention is called to the fact that the word "absorbed" was not used in connection with the word "poison"; that the word "absorbed" was used in connection with the expression, "nor from anything whatever, accidentally or otherwise taken, administered, absorbed or inhaled." After quoting the provision contained in the policy in the Robinson case, the court said: "This was a positive provision

that the policy did not cover a case which resulted from poison." In the Dent case, the words "taken or administered" are used in connection with and relate to "poison" as well as to "other injurious matter." In the instant case, the words "taken, administered or inhaled" are not used in connection with the words "poison, or infection" and do not relate to them. They relate to the word "anything." The word "poison" is separated from that which follows by a comma, and the words "or infection" are also separated from that which follows by a comma.

Our attention has been called to no case where the policy exempted the company from liability for death "resulting from poison," holding the company liable, and after careful and painstaking search, we have not been able to find any such authorities.

There is a class of cases where death resulted from blood poisoning superinduced by the bite or sting of some insect, or by a wound, in which it is held the insurer is not exempted from liability by reason of a provision that the policy does not extend to or cover accidental injuries or death resulting "from poison." See *Omberg* v. *United States Mutual Accident Assn.* (1897), 101 Ky. 303, 40 S. W. 909, 72 Am. St. 413; *Martin* v. *Equitable Acc. Assn.* (1891), 61 Hun. 467, 16 N. Y. Supp. 279. These cases, however, are not of controlling influence in a case like the one now before us.

We have not overlooked appellant's contention that there is an inconsistency or ambiguity between the provision found in the benefit certificate and the provision in the constitution. But there is no allegation in the complaint that there is any ambiguity or inconsistency, or that the insured did not understand that the certificate exempted appellee from any liability for death resulting from poison, nor is there any allegation or claim that the insured did not understand and appreciate its

meaning and effect. See *Porter* v. *Preferred Accident Ins. Co.* (1905), 95 N. Y. Supp. 682, 109 App. Div. 103.

We are not impressed with the contention that Art. VII of the constitution is misleading because it is headed "Rules Governing Payment of Benefits" while Art. VI is headed "Accidental Death Benefits." Instead of there being any inconsistency between the benefit certificate and the constitution and by-laws, they are in complete harmony in so far as the question under discussion is concerned. Neither is there any merit in the contention that Art. VII undertakes to limit or take away any indemnity for liability provided for in Art. VI.

It would seem that the insurance contract in the instant case was drawn with the express purpose of excluding liability for death caused by the voluntary inhalation of gas, and to cover death when caused by involuntary inhalation. The insured's death was accidental, but, in the words of the contract, it resulted "from poison," and is not covered by the contract of insurance.

Judgment affirmed.