USA LIFE ONE INSURANCE COMPANY OF INDIANA, Appellant (Defendant Below),

v.

Marshall E. NUCKOLLS, as personal representative of the Estate of Robert L. Nuckolls, deceased; Marshall Nuckolls and Ada Nuckolls, Appellees (Plaintiffs Below).

No. 11S04–9610–CV–682.

Supreme Court of Indiana.

July 14, 1997.

---

J. Lamont Harris, Henthorn, Harris & Taylor, Crawfordsville, for Appellant.

Virginia King Shema, Anderson & Nichols, Haute, for Appellees.

## ON CIVIL PETITION TO TRANSFER

SELBY, Justice.

The issue before this Court on interlocutory appeal is whether the trial court properly denied USA Life One Insurance Company's ("USA Life") summary judgment motion. The Court of Appeals, Judge Friedlander dissenting, reversed the trial court's decision and ordered the trial court to grant summary judgment in favor of USA Life's denial of coverage under the accidental death benefit exclusion. *USA Life One Insurance Co. v. Nuckolls,* 663 N.E.2d 541 (Ind.Ct.App.1996). This Court granted the Nuckolls' petition to transfer, and we now address the two issues presented: 1) whether the trial court properly denied USA Life's summary judgment motion upon the Nuckolls' claim for the accidental death benefit; 2) whether the trial court erred in denying USA Life's summary judg-

ment motion upon the Nuckolls' claim for punitive damages. Because we answer both questions affirmatively, we affirm on the first issue, reverse on the second, and remand to the trial court for further proceedings.

## FACTS

Early in the morning of January 13, 1991, the Lewis Township volunteer firefighters were called to the scene of a car fire and fatality. The badly burned body of Robert Nuckolls was removed from the car and sent to Regional Hospital for an autopsy. Robert Nuckolls had apparently fallen asleep in his car while smoking a cigarette, and the lit cigarette started the fire.

The autopsy was conducted by Dr. Roland Kohr. The results of a toxicological test showed that Robert Nuckolls had a blood alcohol level of 0.29% and a blood carbon monoxide level of 71.6% at the time of his death. Dr. Kohr concluded in his report that the cause of death was "carbon monoxide and acute alcohol intoxication." (R. at 38.) The Clay County Coroner also conducted an investigation into Robert Nuckolls' death. The Coroner concluded that the death was an accident and that the cause of death was "carbon monoxide poisoning" from "smoke inhalation from burning auto" with the contributing cause of "acute blood alcohol level of .294%." (R. at 32.)

The beneficiaries of Robert Nuckolls' insurance policy, his parents Marshall and Ada Nuckolls, filed a claim with his insurance company, USA Life. Robert Nuckolls had a life insurance policy with USA Life which would pay the named beneficiaries $10,000 upon his death. Robert Nuckolls also had a death benefit rider which would pay his beneficiaries another $10,000 if his death was accidental. The death benefit rider contained a clause which excepts USA Life from liability for "death resulting directly or indirectly from: ... (g) taking of poison or gas, whether voluntarily or involuntarily, accidental or otherwise, except with direct relation to the Insured's occupation." (R. at 11.) USA Life admitted to liability under the basic life insurance policy. USA Life denied liability under the accidental death benefits rider.

The Nuckolls filed a complaint alleging that they are entitled to coverage under the accidental benefit provision and that they are entitled to punitive damages because the denial of the claim was in bad faith. USA Life filed a motion for summary judgment on both claims, asserting that Robert's death fell under the poison exclusion and, therefore, USA Life was not liable. After a hearing before the trial court, the trial judge denied USA Life's motion.

## DISCUSSION

 USA Life argues that the trial court erred in denying its summary judgment motion. When reviewing a summary judgment decision, an appellate court applies the same standard as does the trial court. *Webb v. Jarvis,* 575 N.E.2d 992, 994 (Ind. 1991). We do not weigh the evidence presented by the parties; instead, we consider the evidence designated by the parties in the light most favorable to the non-moving party. *Id.* at 995. Summary judgment is granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992).

### I. Accidental Death Policy Benefits

USA Life argues that the undisputed facts preclude the Nuckolls from receiving any benefits under the accidental death benefits policy, and, therefore, USA Life is entitled to summary judgment. USA Life contends that, because it is undisputed that Robert Nuckolls died from carbon monoxide poisoning, his death clearly falls within the policy exclusion for "the taking of poison or gas." USA Life further contends that, even if the death was caused by the alcohol and not the carbon monoxide, it is still entitled to summary judgment either because alcohol is also a "poison" or because Robert's intoxication was voluntary and, thus, his death was not accidental.

 Under Indiana law, a contract for insurance is subject to the same rules of

interpretation as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). The interpretation is "primarily a question of law for the court, even if the policy contains an ambiguity needing resolution." *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning. *Id.* If, however, the language of the policy is ambiguous, then the court may apply the rules of construction in interpreting the language. *Eli Lilly*, 482 N.E.2d at 470. When an insurance contract contains an ambiguity, it should be strictly construed against the insurance company. This is especially true where the policy language in question concerns an exclusion clause. *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996). When an insurance company has failed to clearly exclude that which the insured attempted to protect against, a court must construe the ambiguous contract to further the policy's basic purpose of indemnity. *Eli Lilly*, 482 N.E.2d at 470.

■ An ambiguity does not arise merely because the two parties proffer differing interpretations of the policy language. *Lexington Ins. v. American Healthcare Providers*, 621 N.E.2d 332, 336 (Ind.Ct.App.1993). Rather, the policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." *Commercial Union Ins. v. Moore*, 663 N.E.2d 179, 181 (Ind.Ct. App.1996); *see Masonic Accident Ins. Co. v. Jackson*, 200 Ind. 472, 481, 164 N.E. 628 (1929).

■ In the present case, the Court of Appeals held that the policy was unambiguous and that Robert Nuckolls' death was excluded by the policy. *USA Life One Ins. Co. v. Nuckolls*, 663 N.E.2d 541 (Ind.Ct.App. 1996). The court held that "taking" as used in the policy was a synonym of "ingest," and that, no matter Robert's state (conscious or unconscious, voluntary or involuntary), he did "ingest" the poisonous gas. *Id.* at 544. Therefore, the court reversed the trial court and ordered the trial court to grant USA Life's motion for summary judgment. *Id.*

As noted by the parties and the Court of Appeals, we can find only one Indiana case that is even somewhat similar to the present case. In *Miller v. Fort Wayne Mercantile Accident Ass'n*, 87 Ind.App. 561, 153 N.E. 427 (1926), the policy holder died after accidentally swallowing carbolic acid instead of medicine. *Id.* The holder had accidental death insurance; however, the policy excluded from its coverage "death ... caused by, or resulting from ... injury (fatal or otherwise) resulting from any poison, or infection, or from anything accidentally or otherwise taken, administered, or inhaled." *Id.* at 562, 153 N.E. 427. The court held that the policy was not ambiguous so far as it excluded from coverage death resulting from poison. *Id.* at 569, 153 N.E. 427. The present case is, however, quite different from *Miller*. Both the policy language and the facts are different.

The policy language used by USA Life appears to be somewhat unusual, and, in fact, we have not been able to find any cases discussing a policy exclusion for "the taking of poison or gas, whether voluntarily or involuntarily, accidental or otherwise." The more usual version of this policy clause would exclude "death from the taking of poison or asphyxiation from or inhaling of gas, whether voluntary or involuntary." *See Welch v. Professional Ins. Corp.*, 140 Ga.App. 336, 231 S.E.2d 103, 104 (1976).

Courts have interpreted the more usual version of this particular exclusion with respect to death from the inhalation of gas. In general, these courts have held that death by inhalation of gas is excluded by the policy language. For example, courts have held that death resulting from carbon monoxide poisoning while sitting in a car, or in a garage with a running car, were excluded by the policy language. *See Transport Life Ins. Co. v. Karr*, 491 S.W.2d 446 (Tex.Civ.App. 1973); *King v. New York Life Ins. Co.*, 72 F.2d 620 (8th Cir.1934). Courts have also found that death due to the inhalation of escaping gas fumes from a gas heater while asleep in a room was excluded by the policy language. *Safe Deposit & Trust Co. v. New York Life Ins. Co.*, 14 F.Supp. 721 (D.Md. 1936). These courts generally conclude that

death by inhalation, whether voluntary or involuntary, conscious or unconscious, intentional or unintentional, is excluded by the policy language. *See id.* at 726; *Transport Life,* 491 S.W.2d at 448; *King,* 72 F.2d at 624.

However, we are not presented with a situation similar to those presented above. In the present case, Robert Nuckolls was trapped, unconscious and inebriated, in a burning car. Eventually, he succumbed to carbon monoxide poisoning. If he had not, he would have died in the fire, a fire so intense that "the [recovered] body itself was unidentifiable." (R. at 51.) The question in this case is: would reasonably intelligent people disagree as to whether a person who expires from carbon monoxide poisoning moments before they certainly would have been burned to death died from the "taking of poison or gas, whether voluntarily or involuntarily, accidental or otherwise"? If they would, then there exists an ambiguity which we must resolve in the insured's favor.

We agree with Judge Friedlander in holding that reasonably intelligent people would disagree over the meaning of the language in this situation. As Judge Friedlander noted in his dissent, "I firmly believe that the average person, when apprised of the circumstances of Robert's unfortunate death, would not respond to the question, 'How did Robert die?' with the answer, 'He took gas.'" *USA Life,* 663 N.E.2d at 546. Instead, they would most probably answer that Robert died in or from the fire. Thus, this exclusion is ambiguous as applied to Robert Nuckolls' death. Applying the rules of construction, we resolve the ambiguity as a matter of law in the insured's favor and hold that the exclusion does not apply in this case.

▮▮▮ We also must note a slightly different reason the exclusion does not apply here. As stated above, insurance contracts are subject to the same rules of construction as are other contracts. *Eli Lilly,* 482 N.E.2d at 470. When interpreting the meaning of the words used in a contract, they should be given their plain, ordinary, and popularly accepted meanings. *Haworth v. Hubbard,* 220 Ind. 611, 44 N.E.2d 967, 968 (1942); *see also* RESTATEMENT (SECOND) OF CONTRACTS

§ 202(3)(a) (1979); INDIANA ENCYCLOPEDIA, CONTRACTS § 119 (1958). This proposition is true for insurance contracts as well. *See Tate,* 587 N.E.2d at 668. However, if the plain and ordinary meaning "would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument," then "the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, *but no further." Haworth,* 44 N.E.2d at 968; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. e. (1979); INDIANA ENCYCLOPEDIA, CONTRACTS § 119 (1958). Courts in Indiana have invoked this rule of construction when interpreting insurance contracts as well. *See Allied Fidelity Ins. Co. v. Lamb,* 361 N.E.2d 174, 179 (Ind.Ct.App.1977); *Stucker v. College Life Ins. Co.,* 139 Ind.App. 422, 438, 208 N.E.2d 731, 739 (1965).

This rule of construction applies without doubt in the present case. Robert Nuckolls purchased a life insurance policy with an additional benefit provision for accidental death. The accidental death benefit provision paid Robert's beneficiaries an extra $10,000 if his death was accidental. The provision did not exclude death due to fire, but did exclude death from the taking of poison or gas. Robert was in his car when it caught on fire. He died from carbon monoxide poisoning, and then his body was consumed by fire to the point of being unidentifiable. Herein lies the absurdity. If one contends that carbon monoxide poisoning is excluded from coverage while burning to death is not, then Robert's beneficiaries are denied coverage solely because he could not keep breathing long enough to be burned to death. As Judge Friedlander voiced in his dissent: "Robert would have been covered by the policy had he burned to death before succumbing to the carbon monoxide gas, but he is not covered because the gas overcame him first. I find this result illogical and inconsistent with the intent of the parties." *USA Life,* 663 N.E.2d at 546. Carried to its logical conclusion, USA Life's interpretation of the exclusion language would lead to an absurd result that is inconsistent with the intent of the parties and the purpose of the

agreement. For this reason also, we interpret the policy in the Nuckolls' favor.

■ USA Life offers a second reason as to why the Nuckolls should be precluded from recovering accidental death benefits. USA Life contends that, even if the death is attributable to the alcohol rather than the carbon monoxide, USA Life is still entitled to summary judgment. USA Life offers two arguments to support this contention. First, USA Life argues that the grain alcohol in Robert Nuckolls' system was also "poison" within the meaning of the policy exclusion. Second, USA Life argues that Robert's intoxication was a purely voluntary act, and that because his death can be linked to the intoxication, it cannot fit under an accidental death benefits policy.

USA Life's first argument centers around the meaning of the word "poison." As stated several times above, when the language of the insurance policy is unambiguous, it should be given its plain and ordinary meaning. *Tate*, 587 N.E.2d at 668. One dictionary defines "poison" as "a substance causing illness or death when eaten, drunk, or absorbed even in relatively small quantities." WEBSTER'S NEW WORLD DICTIONARY 1101 (2d ed. 1982). Black's Law Dictionary defines "poison" as "a substance having an inherent deleterious property which renders it, when taken into the system, capable of destroying life. A substance which, on being applied to the human body, internally or externally, is capable of destroying the action of the vital functions, or of placing the solids and fluids in such a state as to prevent the continuance of life." BLACK'S LAW DICTIONARY 1041 (5th ed. 1979).

■ USA Life would have us agree that the alcohol which Robert Nuckolls drank is "poison" under the death benefit exclusion. Apparently USA Life bases it claim upon the. January 3, 1994 affidavit of Dr. Roland Kohr. Dr. Kohr noted that "[e]thanol (grain alcohol) is also a poisonous substance capable of causing death in humans." (R. at 37.) We do not, however, rely upon a medical opinion to define the language as found in an insurance policy. We follow the plain, ordinary, and everyday definition of the language. In this case, the plain and ordinary definition of "poison" connotes a substance which is caustic enough to lead to death even in small doses. We do not believe that alcohol, whatever problems it may cause, would fall under the common parlance as "poison."

■ USA Life's second argument concerns whether the Nuckolls are precluded from recovery because Robert's voluntary act of drinking was a contributing factor. Specifically, USA Life, relying again on Dr. Kohr's affidavit, argues that Robert's intoxication impaired his ability to escape from the burning car and reduced the level of carbon monoxide necessary for death. Thus, USA Life argues, the death was not accidental because some of the preceding conduct was voluntary.

USA Life attempts to take an approach that is not consistent with the policy language and may not be consistent with the law in Indiana and a majority of jurisdictions. USA Life is apparently attempting to require that both the actions which lead to the death and the death, as a result of those actions, be accidental. Such a distinction has been called the difference between death by "accidental means" and death because of "accidental results."[1] Even if we would be will-

---

1. Some insurance policies cover death only as a result of "bodily injuries effected solely through external, violent and *accidental means*." *See Freeman v. Commonwealth Life Ins. Co.*, 149 Ind. App. 211, 271 N.E.2d 177, 178 n. 2 (1971) (emphasis added). There is a body of law, both in Indiana and elsewhere, which addresses whether, under this policy language, there is a difference between death by "accidental means" and death because of "accidental results." *See Harrell v. Minnesota Mutual Life Ins. Co.*, 937 S.W.2d 809 (Tenn.1996); Note, *"Accident" and "Accidental Means" in Indiana*, 36 Ind. L.J. 376 (1960). These discussions question whether a

voluntary act (the "means") would preclude recovery for an accidental death (the "result"). One general body of such law holds that death as the foreseeable result of a voluntary act is not death as a result of "accidental means" and is not covered. *See Harrell*, 937 S.W.2d at 812. The other general body of such law holds that there is no discernable distinction between "accidental results" and "accidental means" in determining whether a death was accidental. These courts hold that so long as the policy holder did not intend or expect death to result from his acts, his death is accidental and is covered under the policy. *Id.* at 814 (noting that Tennessee, from

ing to go against Indiana case law and the weight of authority on this question, USA Life's policy does not support this argument. Robert Nuckolls' accidental death benefits policy defines a covered injury as "*Accidental bodily injury* ... which result in the Insured's death." (R. at 11.)(emphasis added.) There is no evidence to show that Robert's injuries which resulted in his death were anything other than accidental, no matter the volition of his initial actions. Therefore, his intoxication did not prevent him from being covered. *See Harrell v. Minnesota Mutual Life Ins. Co.,* 937 S.W.2d 809 (Tenn.1996).

Under the undisputed facts of this case, we find that USA Life is not entitled to summary judgment on this claim. Neither death due to carbon monoxide poisoning nor death due in some part to intoxication are excluded under the accidental death policy provision.

## II. Punitive Damages

 USA Life next argues that the trial court erred when it failed to grant USA Life's summary judgment motion on the Nuckolls' punitive damages claim. The Nuckolls, USA Life contends, were not entitled to receive any benefits under Robert Nuckolls' accidental death benefits policy. Thus, USA Life's refusal to pay the benefits was not in bad faith and cannot support a punitive damages claim. USA Life concludes, therefore, that it is entitled to judgment as a matter of law.

 Under Indiana law, in order for a plaintiff to recover punitive damages from a breach of contract claim, the plaintiff must "plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Miller Brewing Co. v. Best Beers,* 608 N.E.2d 975, 984 (Ind.1993). An insurance company has a duty to deal with its insured in good faith, and the breach of that duty allows for a cause of action in tort. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515,

519 (Ind.1993). The erroneous denial of coverage does not necessarily violate an insurance company's duty of good faith. *Id; Nelson v. Jimison,* 634 N.E.2d 509, 512 (Ind.Ct. App.1994). Furthermore, proof that a tort was committed does not necessarily establish the right to punitive damages. *Erie Ins.,* 622 N.E.2d at 520; *Nelson,* 634 N.E.2d at 512. Punitive damages may be awarded only if there is clear and convincing evidence that defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Id.* at 520.

As noted previously, the parties involved in a summary judgment motion must specifically designate the portions of the evidence that they wish the court to rely on, and the court must make its summary judgment decision on that designated evidence. *See* Ind.Trial Rule 56(C); *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). The moving party must show, by its designated evidence, that no question of fact as to any material issue exists, and that it is entitled to judgment as a matter of law. *Jarboe v. Landmark Community Newspapers,* 644 N.E.2d 118, 123 (Ind.1994). If the moving party does so, then the burden shifts to the non-moving party to show contrary evidence. *Id.* A court may grant summary judgment to resolve a punitive damages claim. *See Breeck v. City of Madison,* 592 N.E.2d 700, 703 (Ind.Ct.App.1992).

In looking to the evidence designated by the parties, we find that USA Life has met its burden while the Nuckolls have not. The evidence designated by USA Life relevant to the punitive damages claim showed that, given all of the facts and inferences surrounding Nuckolls' death in the light most favorable to the Nuckolls, USA Life denied coverage in good faith under its interpretation of the policy language. The evidence designated by the Nuckolls relevant to the punitive dam-

this case forward, was following the majority of jurisdictions which did not distinguish between "accidental means" and "accidental results"). Our Court of Appeals addressed this issue in *Freeman* and agreed with the jurisdictions that do not make a distinction. The Court of Appeals

held that "reasonable foreseeability" is not the proper test to determine whether a death was accidental under these policies; instead, coverage is excluded only if the policy holder intentionally acted such that he expected death. *Freeman,* 271 N.E.2d at 184.

ages claim showed that the Nuckolls interpreted the policy language differently than did USA Life. Thus, the Nuckolls claim for punitive damages rests upon a disagreement over how to interpret the policy. The only question to decide was one of law for the court. The Nuckolls have not shown that there are any questions of fact to decide as to the punitive damages claim. We reverse the trial court's denial of summary judgment on this issue, and order the court to grant summary judgment in USA Life's favor.

### III. Conclusion

The Nuckolls' claim under the accidental death benefits policy is not excluded by the language of the policy. Under the facts as designated, there is no basis for the Nuckolls' punitive damages claim. Therefore, we affirm the trial court's denial of summary judgment as to the Nuckolls' policy benefits claim, but reverse the denial of summary judgment as to the punitive damages claim. We vacate the Court of Appeals decision and remand to the trial court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.