Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 20 2014, 5:40 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN J. PETERS**
Plunkett Cooney, P.C.
Indianapolis, Indiana

**DAVID E. WALKER**
**MARK R. SCHMIDT**
Walker Wilcox Matousek LLP
Chicago, Illinois

ATTORNEY FOR APPELLEE:

**WILMER E. GOERING**
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 40A01-1312-PL-516 |
| THE LEE GROUP SHELBYVILLE HOLDING COMPANY, LLC, | ) ) ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1207-PL-36

**November 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal, certain underwriters at Lloyd's, London ("Underwriters") appeal the trial court's denial of their motion for summary judgment against The Lee Group Shelbyville Holding Company, LLC ("Lee Group").[1] Underwriters raise one issue which we revise and restate as whether the trial court erred in denying their motion for summary judgment. We affirm.

FACTS AND PROCEDURAL HISTORY

Underwriters insured commercial property of Lee Group through a policy (the "Policy") for a period between March 28, 2011, and June 28, 2011. The Policy listed Burns & Wilcox, Ltd. ("Burns"), as agent.[2] On April 29, 2011, Lee Group submitted a property loss notice to Underwriters asserting that it sustained damage to its roof during a windstorm on April 27, 2011. Underwriters commenced an investigation to adjust the loss.

A series of communications occurred between certain individuals. The roles or positions of some of the individuals are not identified by the parties on appeal nor revealed by our review of the record. On June 3, 2011, Robert Trombley, a property claims examiner at Burns, sent an e-mail message to Murray Edward and attached the adjuster report and the property loss notice and certificate of insurance.[3] Trombley provided some

---

[1] Underwriters list "Lloyd's London" as the appellants on the caption page of their brief but indicate that the appellants are "those Certain Underwriters at Lloyd's, London subscribing severally as their interests appear thereon and not jointly to Commercial Property Policy Number SRD440869," and that they were sued incorrectly as "Lloyd's, London." Appellant's Brief at 1.

[2] Lee Group alleged in its complaint that it had contracted with Burns through its authorized agent, Regions Insurance, Inc., for a commercial policy insuring its real and personal property located at 701 Hodell Street in Shelbyville, Indiana.

[3] The parties do not point to and our review of the record does not reveal the role of Murray Edward.

2

details regarding the claim and stated that Lee Group was not in compliance with the "80% co-insurance." Appellants' Appendix at 427. Trombley wrote that Roxanne Logan "advised the branch underwriter that based on these issues she was mailing out DNOC[4] to be effective 6/1/2011 in lieu of letting the policy expire on 6/28/2011." Id. Trombley alleged that "it appears this risk was represented to us incorrectly." Id. He stated that the "DNOC [was] processed at 10:17 AM on the 29th of April prior to receiving notification of the loss." Id. He requested Edward to "review and advise how Underwriters wish to proceed with the claim." Id.

On June 8, 2011, Daniel Mahoney sent an e-mail message to Trombley and Edward stating "Lead Underwriter has noted W.P.[5] With the amount of discrepancies and issues on this Risk would [Burns] not have been better placed to Rescind Policy due to material mis-representation and Return Premium?" Id. at 429. On June 14, 2011, Trombley sent an e-mail message to Mahoney and stated that "we do feel that there was material misrepresentation but wanted to provide Underwriters with all the facts and strongly feel that this should be referred to counsel" and recommended Walker Wilcox and Matousek. Id. at 431. On June 16, 2011, Chris Bristow e-mailed Trombley and stated that Underwriters had agreed to the selection of Walker Wilcox and Matousek and were awaiting their advice.

---

The e-mail merely lists "Murray Edward," and the cover sheet for the exhibit states: "Correspondence from Robert Trombley to Murray Edward dated June 3, 2011." Appellants' Appendix at 426.

[4] Although not defined in the record, we deduce that DNOC may stand for direct notice of cancellation.

[5] This abbreviation has not been defined in the record.

3

Meanwhile, on June 8, 2011, Carolyn Smithhisler, a claims manager at Regions Insurance Inc., sent an e-mail message to Joe Sandifer asking that he review the facts of the claim and the attached paperwork and reconsider his decision. On July 28, 2011, Smithhisler e-mailed Trombley and asked for any new updates on the claim and indicated that she received a voicemail from Lee Group's agent stating that Lee Group had decided to demolish the part of the building where the roof was compromised and that "[t]hey wanted to let everyone know in case any additional pictures need to be taken." Id. at 441. She also stated to contact Ruthy at Lee Group if there was anything additional he needed regarding the claim.

In a letter dated November 4, 2011, Wilmer Goering of Alcorn Goering & Sage, LLP, informed Ben Holloway of Holloway & Associates that he understood that Ben Holloway was the claim adjuster handling the claim, that he had been retained by Lee Group to represent them, requested a copy of the insurance policy, and demanded that Lee Group's claim be paid in full within ten days of receipt of the letter. In a fax from Joshua Stigdon of Alcorn Goering & Sage, LLP, to Holloway, and dated March 13, 2012, Stigdon stated that a response to the November 4, 2011 letter had not been received and asked: "Please direct us to whom we should discuss this claim." Id. at 445.

In a letter from Lee Group's counsel to Underwriters' counsel dated March 19, 2012, counsel attached the November 4, 2011 letter and asked for a response as soon as possible. On April 5, 2012, Lee Group's counsel sent an e-mail message to counsel for Underwriters and indicated that he had not received a response to his March 19, 2012 letter and asked counsel to verify that they were Underwriters' counsel.

4

In a letter dated April 6, 2012, counsel for Underwriters informed counsel for Lee Group that "[t]he adjustment of the loss revealed the existence of coverage issues and the presence of a co-insurance penalty that appeared to place the loss, if covered, within the insured's $25,000 deductible." Id. at 451. The letter also stated: "I am not aware of Lee Group stating what precisely its claim is and/or the amount it is seeking. Underwriters will promptly consider any additional information you can provide in that regard." Id.

In a letter dated May 24, 2012, counsel for Lee Group wrote counsel for Underwriters and alleged that Lee Group suffered damage to their structure on April 27, 2011. The letter alleged that the roof was damaged and began to leak due to severe winds, that over the course of the next week or so, the Shelbyville area received over two inches of rain, and that due to the damaged roof, the rain was able to enter the structure and do serious, irreversible damage. The letter provided a breakdown of Lee Group's damages of $640,000 for loss of the building, $150,000 for loss of business records, and $252,000 for demolition and clean-up of the building. The letter demanded $753,374 to settle the client's claim which alleged to take into account the deductible of $25,000 and coinsurance penalty of 80%. Weather reports from select days in the time period were attached to the letter.

In a letter dated June 25, 2012, counsel for Underwriters wrote counsel for Lee Group and stated that the claim of roughly $753,000 in the May 24, 2012 letter was the first presentation of any such damages to Underwriters and requested information

regarding the claim.[6] Underwriters' counsel did not receive any response to his June 25, 2012 letter. On July 17, 2012, Underwriters' counsel sent follow up correspondence to Lee Group's counsel regarding the requested documents, but did not receive the requested materials. On July 18, 2012, Lee Group's counsel informed Underwriters' counsel that he was discussing options with Lee Group.

On July 30, 2012, Lee Group filed a complaint and jury demand against Burns alleging that it had contracted with Burns through its authorized agent, Regions Insurance, Inc., for a commercial policy insuring its real and personal property located at 701 Hodell Street in Shelbyville, Indiana. The complaint alleged that Burns had breached its implied covenant of good faith and fair dealing that runs from insurer to insured inherent in the insurance policy issued to Lee Group.

---

[6] Specifically, the letter requested:

- Copies of all documents, communications and any other items of information such as, but not limited to, correspondence with engineers, contractors, or other personnel regarding damage to the structure, vendor invoices regarding any repairs, photographs of the damage at any time between the storm and the date of demolition, and other records (be they electronic or otherwise) depicting the claimed damage or that pertain to the determination that a portion of the structure had to be demolished.
- Any documentation, information, pictures, etc. regarding any damage to the building or roof caused by storms that took place prior to the April 27 storm.
- Copies of all documents and items of information supporting the demolition and clean up claim for $252,000.
- Identification of the business records that were lost, along with copies of all documents and items of information regarding the valuation given to those records.
- Any and all documents, records or other information pertaining to the occupancy of the building as of the date of the storm, including any leases or rental agreement that would document the occupancy of the building.

Appellants' Appendix at 349-350.

On August 13, 2012, counsel for Underwriters sent a letter to Lee Group's counsel stating that Underwriters had not received the requested information and invoked their right to conduct an "Examination Under Oath ('EUO') of The Lee Group pursuant to Loss Condition E.3b. of the Policy." Id. at 358. In an e-mail dated August 13, 2012, Lee Group's counsel informed Underwriters' counsel that it had filed suit in the Jennings Circuit Court. In an e-mail dated August 14, 2012, Lee Group's counsel informed Underwriters' counsel that, "[a]s for the EUO, you obviously have the right to take a deposition of our client, which we will assist in scheduling, but since litigation is pending, I believe a deposition is more appropriate." Id. at 364. In a letter dated August 22, 2012, Underwriters' counsel informed Lee Group's counsel that Underwriters were not parties to the litigation that Lee Group filed and requested that a representative of Lee Group sit for an EUO.

On September 6, 2012, Lee Group filed a first amended complaint and jury demand against Burns and "Lloyd's London." Id. at 59. Under Count I, Lee Group alleged that Underwriters had yet to pay the claim, that Underwriters breached their implied covenant of good faith and fair dealing that runs from insurer to insured inherent in the Policy, and that the breach is both an actionable tort and a breach of contract. Under Count II, Lee Group alleged that Underwriters "acted with dishonest purpose, moral obliquity, furtive design, and ill will toward Shelbyville Holdings and is liable for punitive damages pursuant to Indiana Code § 35-41-3." Id. at 61.

In an e-mail dated September 14, 2012, and in response to the August 22, 2012 letter, Lee Group's counsel wrote Underwriters' counsel and stated:

7

You incorrectly stated in your letter that I had advised you the Lee Group would not appear for an EUO. Our position is that we will assist you in scheduling a deposition of our client. As for how you decide to do your deposition is up to you. By that I mean if you wish to conduct an EUO at the same time as your deposition, that is perfectly acceptable and in our view, meets the policy requirements of our client.

Id. at 378.

On October 1, 2012, Burns filed a motion to dismiss, which the court later granted. In a letter dated October 3, 2012, Underwriters' counsel wrote a letter to Lee Group's counsel which stated:

A deposition in the Lawsuit is no substitution for the EUO, which is a condition precedent to coverage. They are two entirely different things. Your letter also overlooks that the Lee Group breached the Policy when it sued Underwriters before sitting for the EUO and before producing documents to support the loss.

Id. at 382. That same day, Underwriters filed an answer, affirmative defenses, and counterclaim. Underwriters asserted that the trial court should grant a declaratory judgment in their favor ordering that Lee Group was not entitled to coverage based on Lee Group's breach of the Policy's "Duties In the Event of Loss or Damage" Condition and, furthermore, that Lee Group had no right to bring legal action against Underwriters under the "Legal Action Against Us" provision. Id. at 129. On November 29, 2012, Lee Group filed its answer to Underwriters' counterclaim.

On February 21, 2013, Underwriters filed a motion for summary judgment. Underwriters requested that the court grant summary judgment in their favor and that "Lee Group is not entitled to coverage based on Lee Group's breach of the Policy's 'Duties In the Event of Loss or Damage' Condition and, furthermore, that [Lee Group] had no right

8

to bring legal action against Underwriters under the 'Legal Action Against Us' provision." Id. at 269. Underwriters also requested that the court dismiss Lee Group's action against them.

On March 6, 2013, Lee Group filed a motion for enlargement of time to respond to Underwriters' motion for summary judgment. On March 11, 2013, the court granted Lee Group's motion for enlargement of time and ordered Lee Group to respond by May 22, 2013. On March 14, 2013, Underwriters filed a motion to reconsider and vacate the March 11, 2013 order. On March 19, 2013, the court denied Underwriters' motion to reconsider. On May 22, 2013, Lee Group filed a response to Underwriters' motion for summary judgment. On June 12, 2013, Underwriters filed a reply memorandum in support of their motion for summary judgment.

On September 13, 2013, the court held a hearing on Underwriters' motion for summary judgment and took the matter under advisement.[7] On September 23, 2013, the court denied Underwriters' motion for summary judgment. On October 23, 2013, Underwriters filed a motion to certify the court's order for interlocutory appeal. On November 4, 2013, the court certified its order and stayed further trial court proceedings pending appeal.[8] On December 5, 2013, Underwriters filed a motion for an interlocutory appeal, and this court granted the motion to accept jurisdiction.

---

[7] The record does not contain a copy of the transcript of the hearing.

[8] This order was noted in the chronological case summary on November 7, 2013.

DISCUSSION

The issue is whether the trial court erred in denying Underwriters' motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973.

The Indiana Supreme Court recently held that summary judgment is a "high bar" for the moving party to clear in Indiana and held:

> Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a "blunt . . . instrument," by which "the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial, and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

Hughley v. State, 15 N.E.3d 1000, 1003-1004 (Ind. 2014) (quotations and citations omitted).

Our review of a summary judgment motion is limited to those materials designated to the trial court. Mangold, 756 N.E.2d at 973. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of

material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

Underwriters argue that they are entitled to judgment as a matter of law based on Lee Group's refusal to produce documents and sit for an EUO before suing Underwriters. They assert that they are entitled to judgment on all of Lee Group's causes of action, "whether sounding in breach of contract, bad faith or for punitive damages, based on Lee Group's breach of the Underwriters Policy Conditions." Appellants' Brief at 21. They contend that Lee Group's breach prevented Underwriters from determining the basis for the $753,347 claim made in Lee Group's May 24, 2012 letter, prevented them from concluding their claim investigation, and put them to the expense of this suit and appeal. Underwriters also appear to argue that Lee Group's claims for bad faith and punitive damages fail as a matter of law because the "undisputed material facts establish that Lee Group breached the Underwriters Policy's 'Duties In the Event of Loss or Damage' Condition and 'Legal Action Against Us' Condition by failing to produce requested documents and sit for an EUO . . . ." Id. at 26.

Lee Group argues that Underwriters failed to even mention Lee Group's cause of action for breach of good faith in its motion for summary judgment and that Lee Group had no burden to designate a dispute of material fact, and that Underwriters' motion was properly denied. Lee Group contends that the facts and reasonable inferences taken in the light most favorable to it demonstrate collusion, intentionality, and deception on the part

of Underwriters. Lee Group asserts that Underwriters' allegation that Lee Group breached the terms of the contract ignores the fact that Underwriters denied Lee Group's claim, in violation of the contract, before Underwriters' sought to enforce the contract provisions, and that summary judgment is not appropriate when discovery is ongoing. Lee Group further argues that it seeks discovery directly related to Underwriters' denial of the claim and Underwriters' decision to "slow walk and stonewall any review or update to the claim for more than one year following the loss." Appellee's Brief at 16-17. In their reply brief, Underwriters contend that Lee Group's claim that they had twice denied the claim was not supported by the record.

A contract for insurance is subject to the same rules of interpretation as other contracts. USA Life One Ins. Co. of Ind. v. Nuckolls, 682 N.E.2d 534, 537-538 (Ind. 1997). Thus, if the language in the insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. Id. at 538. However, if the language of the policy is ambiguous, we may apply the rules of construction in interpreting the language. Id. When an insurance policy contains an ambiguity, it should be strictly construed against the insurance company. Id. A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." Id.

Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 518 (Ind. 1993). A good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 976 (Ind. 2005). As

12

a general proposition, "[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." Id. at 977. This obligation of good faith and fair dealing includes the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. Hickman, 622 N.E.2d at 519. Fact issues may preclude summary judgment in favor of an insurer on an insured's bad faith claim. Hoosier Ins. Co. v. Audiology Found. of Am., 745 N.E.2d 300, 310 (Ind. Ct. App. 2001), reh'g denied, trans. denied.

The designated evidence includes communications between various individuals which, as noted earlier, the parties do not identify and our review of the record does not reveal. The evidence reveals that Lee Group submitted a property loss notice on April 29, 2011, asserting that it sustained damage to its roof during a windstorm on April 27, 2011. Lee Group designated evidence of its communications and a summary of communications with Underwriters or its agents.

Lee Group's brief alleges that Underwriters denied its claim "for the first time in June 2011 when it communicated to Regions that due to 'discrepancies' the policy would not cover the damage." Appellee's Brief at 15 (citing Appellants' Appendix at 427). Page 427 of the Appellants' Appendix contains the e-mail message dated June 3, 2011, from Trombley at Burns to "Murray Edward." Appellants' Appendix at 427. The e-mail message does not contain the word "discrepancies" as quoted by Lee Group, but does discuss some discrepancies (i.e., square footage of building(s)) and indicates that an

13

individual was sending a "DNOC," which, as noted above, may indicate a direct notice of cancellation. The factual assertions regarding the discrepancies in the e-mail appear to have been disputed by Lee Group, and Underwriters do not point to designated evidence indicating that a cancellation of the Policy was authorized as a matter of law.

Based upon our review of the designated evidence, issues of material fact exist as to whether Underwriters acted in bad faith or breached the contract, and we cannot say that the trial court abused its discretion in denying Underwriters' motion for summary judgment. See Kempf v. St. Paul Reinsurance Co. Ltd., 872 N.E.2d 162, 169 (Ind. Ct. App. 2007) (holding that neither party has established that summary judgment is warranted on the issue of the insured's claim that the insurer acted in bad faith), reh'g denied.

To the extent that Underwriters argue summary judgment is proper based on Lee Group's refusal to produce documents and sit for an EUO before suing Underwriters, we observe that "[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." Illiana Surgery & Med. Ctr., LLC. v. STG Funding, Inc., 824 N.E.2d 388, 403 (Ind. Ct. App. 2005). Accordingly, because we conclude that issues of material fact exist as to whether Underwriters acted in bad faith or breached the contract and that the trial court did not abuse its discretion in denying Underwriters' motion for summary judgment, we need not address Underwriters' argument regarding any possible subsequent breach by Lee Group.

14

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Underwriters' motion for summary judgment.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.