794 So.2d 949 (2001)
DAWSON FARMS, L.L.C., Plaintiff-Appellant,
v.
MILLERS MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 34,801-CA.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2001.
*950 Donald L. Kneipp, Monroe, Counsel for Appellant.
Tutt & Bordelon, L.L.C. by Charles G. Tutt, Shreveport, Thomas A. Bordelon, Natchitches, Jennifer P. McKay, Counsel for Appellee.
Before NORRIS, BROWN and DREW, JJ.
BROWN, J.,
Dawson Farms, L.L.C., ("Dawson") was insured under an Agribusiness Policy by Millers Mutual Fire Insurance Company, ("Millers Mutual"). After Millers Mutual denied coverage for losses sustained in 1997 to a climatically controlled warehouse and its contents, Dawson sued. A jury found no coverage. Because limitations upon coverage must be clear and expressed in plain, unambiguous and understandable language, we reverse and find coverage for the loss to the contents of the warehouse, the costs of Dawson's efforts to mitigate its damages and award penalties and attorney fees.

Facts
Dawson Farms grows and sells sweet potatoes. In late 1996, it had a refrigerated facility built to store sweet potatoes during the summer months. By extending the selling season into the summer months, it hoped to obtain better prices and be competitive with North Carolina growers who were storing potatoes with similar facilities.
The parties are in agreement that condensation accumulated and fell onto the stored sweet potatoes. Such condensation could promote the growth of bacteria which would destroy or diminish the quality of the potato. According to defendant's investigator, Dawson made a "heroic" effort to remedy the problem. Even so, Dawson liquidated its 1997 crop in May. *951 Dawson filed a claim under its insurance policy which was denied by Millers Mutual. Dawson filed several lawsuits, including one against the contractor, architect/designer and the instant suit against Millers Mutual claiming damages of $1,153,556 and penalties and attorney fees.
Millers Mutual denied coverage claiming that the policy covers only water damage directly resulting from the breaking or cracking of a water or steam system and not water damage from condensation. Alternatively, Millers Mutual argues that the policy expressly excludes losses arising out of defects in design, specifications, workmanship and construction. Millers Mutual also argues that Dawson forfeited its right to coverage because its settlement with the building contractor and architect/designer compromised Millers' subrogation rights.
A unanimous jury found that Dawson had failed to prove that its damages were insured under the policy. Based on the jury's verdict the trial court entered judgment for defendant. Dawson now appeals.

Discussion
The Millers Mutual policy in this case is a Special Perils Policy. A Special Perils policy covers Basic Perils, such as fire and wind, etc., listed in Sections AL. It also covers Broad Perils listed in Sections M Q. Its coverage, however, is not limited to Basic and Broad Perils. Under Section R, coverage is extended to "Other Risk of Direct Physical `Loss,' except loss of or damage to property" expressly excluded. We conclude that this language provides the greatest coverage and describes an "all risk" policy. We note that Ledatha Pierce, the agent who sold the policy to Dawson, testified that she sold Dawson an "all risk" rider covering the warehouse to Dawson's existing policy.
An "all risk" policy is an insurance policy where all risks are covered unless clearly and specifically excluded. Cochran v. Travelers Ins. Co., 606 So.2d 22 (La.App. 5th Cir.1992). Under Louisiana law, it is the insurance company's burden to prove that a loss comes within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La. 1993); Crocker v. Roach, 33,507 (La. App.2d Cir.08/23/00), 766 So.2d 672, writ denied, 774 So.2d 983 (La.2000).
The first interrogatory propounded to the jury asked: "Do you find that Dawson Farms has proven ... that it suffered damages ... caused by a peril or perils insured ... ?" Although it is arguable that the jury should not have been asked to decide coverage (see Crocker, supra ), the jury's answer that Dawson did not prove that the accident causing its damages was a insured peril was clearly wrong. The incident or accident involved was a risk or peril covered by the all other risks language in Section R. Thus, the critical question in this case was whether Millers Mutual, and not Dawson, carried its burden of proof that the loss fell within a policy exclusion. Crocker, supra.
Both parties agree that humid air, which is characteristic in a sweet potato storage facility, penetrated the moisture barrier and developed condensation when it came in contact with the steel beams and that the moisture barrier was constructed of rigid sheets of insulation board which were installed with gaps that were not sealed or taped according to the manufacturer's specifications. Also, added moisture resulted from design specifications that allowed an empty air space between the insulation and the outer roof. As a result, there ensued two distinct losses or accidents. First, the cost to repair the faulty workmanship and design, and second, the resulting damage to the contents of the warehouse when the humid air came *952 in contact with the steel beams causing condensation accumulation. Millers Mutual contends that an exclusion under Section R for faulty design and workmanship is applicable to both losses. The pertinent part of that section excludes physical loss or damage to property caused by "faulty, inadequate or defective ... design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction."
Millers Mutual argues that but for the defects in the design and construction of the warehouse Dawson would not have suffered any loss. Dawson argues that the exclusionary language is ambiguous. Specifically, it claims the second sentence of the paragraph that provides for exclusions contradicts the first sentence. Section R(3)(II)(C) provides:
We will not pay for physical loss of or damage to property caused directly or indirectly by any of the following (faulty design and workmanship). We will pay for resulting "loss" caused by a Peril Insured.

(Emphasis added).
Under Millers Mutual's all risk policy, the accumulation of condensation that eventually rained on the sweet potatoes is a peril insured. Paragraph C provides for the exclusion of damages caused by faulty design and construction but also states in the next sentence that Millers Mutual will pay for a resulting loss caused by a Peril Insured. The paragraph is meaningless unless the cost of repairing the poor workmanship and design is excluded from coverage while any damage resulting from it is covered.
The test for construing an insurance policy is not what the insurer intended the words to mean, but, how the words would have been understood by a reasonable person in the shoes of the insured. The policy should be read as a layman would have read it and not as it might be analyzed by an insurance expert. The plain and obvious meaning of the words should be used in determining the coverage provided under the policy. All doubts and ambiguity should be resolved in favor of coverage. Crocker, supra.
Two cases in which the court concluded that similar exclusionary clauses were ambiguous and found coverage were Lake Charles Harbor and Terminal District v. Imperial Casualty and Indemnity Co., 857 F.2d 286 (5th Cir.1988) and Tex-La Properties v. South State Insurance Co., 514 So.2d 707 (La.App. 2d Cir.1987). In Lake Charles Harbor, a ship loader was damaged when a worn out cable snapped causing a heavy cargo shuttle to crash into the loader. The policy covered "all risks of direct physical loss or damage," but excluded damage caused by a "mechanical or machinery breakdown unless an insured peril ensues, and then only for the actual loss or damage caused by such ensuing peril." (Emphasis added). This was an all risk policy and an insured peril included a shuttle crashing into the machine.
The court concluded that whatever `ensuing peril' may mean, nothing in the policy indicated that it could not include damage to a machine by an outside object (the shuttle) caused by the machine's broken cable. Lake Charles Harbor, supra. See also Macon Light House Revival Center, Inc. v. Continental Insurance Co., 651 F.Supp. 417 (M.D.Ga.1987).
Accordingly, we conclude that Millers Mutual's policy excludes coverage for the cost to repair the loss to the warehouse caused by the faulty design and poor workmanship. We find, however, that the policy does not clearly exclude coverage for the second accident, i.e., the losses associated with the damage to the contents of the building resulting from the accumulation *953 of condensation that fell on the stored potatoes.
Millers Mutual's contention that the settlement between Dawson and the contractor/architect/designer precludes any recovery against Millers Mutual by Dawson is without merit. Millers Mutual denied coverage, refused to participate in the other lawsuit and has failed to show that the settlement included more than the loss to repair the building itself for which there is no coverage.

Damages
Dawson Farms has never held a sweet potato crop in storage for sale through the summer months. Dawson Farms built the refrigerated storage facility in 1996 and had planned to store its crop in the summer months of 1997; instead, because of the condensation problem, it sold the crop by the end of May. In 1998 and 1999, Dawson's broker, Wayne Garber, testified that it was not to their marketing advantage to hold the crop during the summer months. The trial occurred in 2000. Garber stated that the marketing plan for 2000 was to carry some of the crop into the summer because of Hurricane losses suffered by North Carolina growers. There was no testimony that any other Louisiana sweet potato producer/marketer stored potatoes during the summer months.
Robert Dawson testified that after the sweet potatoes are harvested, they are cleaned and graded before shipping. According to Mr. Dawson, at the time of trial, the market price for a 40-pound box of No. 1 grade potatoes was $16, (which is 40 cents per pound), whereas the price for "canners" was 4 cents per pound. Dawson, who is a CPA, testified as to the diminished quality of his 1997 crop due to the condensation and the efforts to mitigate those losses. He testified as to the greater number of rotted and spotted potatoes than in previous years.
We conclude, after reviewing the testimony and the exhibits, that plaintiff presented sufficient proof of actual damages itemized as follows:

(1) Damaged Potatoes $ 93,669.00
(2) Labor and Supplies to Cover & 848.00
 Protect
(3) Clean-Up Costs $ 10,917.00
 ___________
 Total $105,434.00

Interest is due on this sum from the date of demand. Williams v. Louisiana Indemnity Co., 26,887 (La.App.2d Cir.06/21/95), 658 So.2d 739.
Dawson also contends that it was penalized for selling in May potatoes it could have sold in June and July. We conclude that the plaintiff has not submitted sufficient proof of these damages. As previously noted, there is no history of sales for these months from Louisiana growers. Without any history of sales in the months of June and July, to award an added premium on Louisiana potatoes for those months is too speculative.

Penalties and Attorney Fees
An insurer's liability to pay penalties and attorney fees is based on whether its action in denying coverage is arbitrary, capricious and without probable cause. The insurer must take the risk of misinterpreting its policy provisions; if it errs in interpreting its own insurance contract, such error will not be considered as reasonable ground for delaying payment of benefits, and it will not relieve insurer of payment of penalties and attorney fees. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La.1979).
The testimony and exhibits indicate that Millers Mutual knew from the outset that the policy was an all risk policy, and while the policy language excludes damage to the warehouse arising out of defective design and construction, it covered *954 resulting water condensation damage to the contents. Accordingly, we assess penalties and attorney fees pursuant to La.R.S. 22:658. The penalty is 10% of the damages calculated above. Based upon the evidence in the record, we conclude that a reasonable attorney fee for the preparation, trial and appeal of this matter is $30,000. Interest on penalties and attorney fees runs from the date of judgment awarding same. Williams, supra.
Costs of trial and appeal are accessed against Millers Mutual.
Accordingly, we vacate the judgment of the court below and render judgment for Dawson Farms and against Millers Mutual Fire Insurance Company for the sum of ONE HUNDRED FIVE THOUSAND, FOUR HUNDRED THIRTY FOUR and NO/100'S ($105,434.00) DOLLARS. Interest on this amount is due from the date of demand. Williams, supra.
We render judgment for Dawson Farms and against Millers Mutual Fire Insurance Company for a penalty in the sum of TEN THOUSAND, FIVE HUNDRED FORTY-THREE and 40/100 ($10,543.40) DOLLARS. Interest on this amount is due from date of judgment.
We render judgment for Dawson Farms and against Millers Mutual Fire Insurance Company for attorney fees in the sum of THIRTY THOUSAND and NO/100 ($30,000.00) DOLLARS. Interest on this amount is due from date of judgment.
All costs of trial and appeal are to be paid by Millers Mutual Fire Insurance Company.
REVERSED AND RENDERED.