The **HARTFORD CASUALTY INSURANCE COMPANY,** Appellant–Defendant,

v.

**EVANSVILLE VANDERBURGH, PUBLIC LIBRARY,** Appellee–Plaintiff.

No. 82A01–0510–CV–478.

Court of Appeals of Indiana.

Jan. 25, 2007.

Thomas H. Bryan, Fine & Hatfield, Evansville, IN, Attorney for Appellant.

Steve Barber, Jeff Shoulders, Barber & Shoulders, LLP, Evansville, IN, Stanley C. Fickle, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.[1]

The Evansville Vanderburgh Public Library ("the Library") filed a complaint in the Vanderburgh Superior Court against Hartford Casualty Insurance Company ("Hartford") alleging breach of contract and seeking a declaratory judgment that Hartford must indemnify the Library for damage to one of its buildings. The par-

ties filed cross-motions for summary judgment. The trial court entered summary judgment for the Library after finding that there is coverage for the Library's losses under the Hartford all-risk policy. Hartford appeals and argues that coverage for the Library's loss is excluded under the General Exclusion, Workmanship Exclusion, and Earth Movement Exclusions [2] set forth in the policy. Concluding that as a matter of law, the Library's losses are excluded under the policy's General Exclusion, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

In 2000, the Library acquired a historic building listed on the National Registry of Historic Buildings ("the 805 Building") with the intent to integrate the building into the new Central Library. The Library also acquired an old convention center located on the property adjacent to the 805 Building. The convention center was demolished and an underground parking garage was to be built on that site. Excavation for the garage included installing an earth-work retention system, one purpose of which was to protect the 805 Building during the excavation. Industrial Contractors, Inc. was hired to perform the excavation work for the underground parking garage.

On February 28, 2002, Industrial Contractors began to install sheet piling for the excavation retention system using a high-frequency, variable moment vibratory hammer. The sheet piling was installed along the west and south edges of the 805 Building. The southwest corner of the 805 Building was damaged during the installa-

1. We heard oral argument on October 24, 2006, at the Indiana University Law School in Bloomington. We thank the school's administration, faculty, and students for their hospitality, and counsel for their presentations.

2. Because we conclude that the Library's losses are excluded under the General Exclusion, we need not address Hartford's arguments concerning the Workmanship and Earth Movement Exclusions in this appeal.

tion of the sheet pilings. After discovering the damage, Industrial Contractors proceeded to install additional sheet piling with an impact hammer as recommended by the project engineer. When Industrial Contractors excavated the dirt behind the sheet wall, the building suffered additional damage. After a preliminary investigation, the Library concluded that the design and use of the pile driving hammer and cantilevered earth retention system caused or contributed to the damage to the 805 Building. Appellant's App. p. 1255. Eventually, the Library determined that the 805 Building was a total loss requiring demolition.

William Konicki, the civil engineer retained by the Library to evaluate the collapse of the 805 Building, concluded:

> In my professional engineering opinion, the initial damage to the 805 Building ensued from the high frequency variable-moment pile driving hammer causing an acceleration of the loose sand stratum below the building foundations. Loose sand deposits, even dry sand deposits, are extremely susceptible to densification by vibration, when the vibrations produce accelerations above a critical value. Empirical data as well as experience show that the acceleration levels needed to produce densification and subsequent settlement of loose sands is extremely low and even the lower accelerations expected from the hammer selected by the contractor are sufficient to produce significant settlement in this deposit. Without the mechanical vibration produced by the pile-driving hammer, the loose sand deposit below the existing building foundation would not settle naturally to produce the measured movement.
>
> In my professional engineering opinion, the second increment of damage to the 805 Building ensued from the horizontal displacement of the cantilevered sheeting away from the [805] Building and toward the excavation. The horizontal movement of the sheeting is a maximum at the top and typically decreases toward the bottom of excavation. The horizontal movement of the sheet piling away from the [805] Building creates a triangular shaped void behind the sheeting, this movement allows the retained soils below the building foundations to move into this new space. As the soil fills the newly created void behind the deflected sheet piling it causes a decrease in elevations of the ground surface behind the sheeting and the soils surface below the building foundations, settling the building. Without the horizontal movement of the sheeting piling, due to the excavation of the new Central Library basement in front of the sheeting, the soil below the existing [805] Building foundations would not have naturally settled the additional amount recorded.

Appellant's App. pp. 183–84.

On April 29, 2002, the Library submitted a notice of claim to Hartford. Hartford denied coverage of the Library's claim. Thereafter, the Library filed a complaint against Hartford in the Vanderburgh Superior Court alleging breach of contract and seeking a declaratory judgment that Hartford must indemnify the Library for the damage to the 805 Building.

The Library and Hartford filed cross-motions for summary judgment. In its motion, the Library argued that the damage to the 805 Building falls under the insurance policy's grant of insurance coverage, i.e. the Library sustained a "loss caused by direct physical loss or damage to Covered Property within the policy period[.]" Appellant's App. p. 272. The Library also asserted that the General Exclusion does not bar coverage because its losses are

covered under the policy's Ensuing Loss Coverage provision, which is an exception to the General Exclusion. Therefore, the Library argued that replacement cost of the 805 Building is covered under the policy. In its motion, Hartford argued that under the plain language of the General Exclusion, the Library did not have coverage for construction projects and the resulting damage that occurred to the 805 Building.

In ruling on the parties' cross-motions for summary judgment, the trial court found that the exclusions in the all-risk Hartford policy do not apply to the Library's loss. Specifically, the trial court concluded that the "General Exclusion would only encompass the cost to rectify the faulty pile-driving operations adjacent to the 805 Building. The exclusion does not encompass the damage to the 805 Building which resulted from these operations." Appellant's App. p. 11. Moreover, the court determined that "the Library's loss here is covered as an ensuing loss from the defective pile-driving operations on property adjacent to the 805 Building." *Id.* at 14. Accordingly, the trial court entered summary judgment for the Library and declared, "there is coverage for the Library's losses under the Hartford all-risk policy." Hartford now appeals.

### Standard of Review

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 973 (Ind.2005) (internal citations omitted).

 "Generally, the interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment." *Morris v. Econ. Fire & Cas. Co.,* 848 N.E.2d 663, 665–66 (Ind.2006). "A contract for insurance 'is subject to the same rules of interpretation as are other contracts.'" *Id.* at 666 (quoting *USA Life One Ins. Co. of Ind. v. Nuckolls,* 682 N.E.2d 534, 537–38 (Ind.1997)). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company." *Id.*

"This is especially true where the policy language in question concerns an exclusion clause." When an insurance company fails to clearly exclude "that which the insured attempted to protect against, we must construe the ambiguous policy to further the policy's basic purpose of indemnity." A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning."

*Matteson v. Citizens Ins. Co. of Am.,* 844 N.E.2d 188, 192 (Ind.Ct.App.2006) (quoting *Nuckolls,* 682 N.E.2d at 538).

### Discussion and Decision

Under the Hartford all-risk policy a "Covered Cause of Loss" means "loss caused by direct physical loss or damage to Covered Property within the policy period stated on the Common Policy Declarations ... [u]nless the loss is excluded in

the General Exclusion or the Specific Exclusions[.]" Appellant's App. p. 272. The General Exclusion provides in pertinent part:

> We will not pay for loss or damage caused by, resulting from, or arising out of any acts, errors, or omissions by you or others in any of the following activities, regardless of any other cause or event that contributes concurrently, or in any sequence to the loss or damage:
>
> 1. Planning, zoning, developing, surveying, testing or siting property;
>
> * * *
>
> 3. *Any of the following performed to or for* any part of land, buildings, roads, water or gas mains, sewers, drainage ditches, levees, dams, other structures or facilities, or *any Covered Property;*
>
>> a. *Design, specifications, workmanship,* repair, *construction, renovation,* remodeling, grading, compaction; *or*
>>
>> b. *Furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship,* repair, *construction, renovation,* remodeling, grading or compaction[.]
>
> * * *
>
> **Ensuing Loss Coverage:** *If physical loss or damage by a Covered Cause of Loss ensues,* we will pay only for such ensuing loss or damage.

Appellant's App. p. 272 (emphasis added).

### I. Hartford's Argument

Hartford argues that the General Exclusion "completely excludes this loss from coverage" because "damages resulting from what could generally be referenced as construction-type activities were never intended by the parties to be included in

the policy." Br. of Appellant at 18. Specifically, Hartford asserts that the loss of the 805 Building "occurred as arising out [of] the activities of the *design, specifications,* and *construction* of this project." Br. of Appellant at 19 (emphasis in original).

Hartford asserts that the Library's loss "was the ultimate result of Industrial Contractor's excavation work on the land adjacent to the building" because the vibratory hammer used to install sheeting sent vibrations through the ground which caused the sand in the soil beneath the building to compact. Br. of Appellant at 25–26. The sand compaction then left a hole into which the building collapsed. Additional damage occurred when Industrial Contractors excavated the soil from the south and west sides of the pile retaining wall because the wall deflected. *Id.*

Hartford therefore asserts that "there is no question that all this arose out of design, specification, workmanship, construction, and renovation ... [and] that the damage to the 805 Building was 'caused by, resulting from, or arising out of' that work." Br. of Appellant at 26. Accordingly, Hartford argues that the loss is excluded under the General Exclusion. Finally, Harford contends that "the ensuing loss provision does not expand coverage under any circumstance to provide coverage under the facts of this case." *Id.* at 39. Since no Indiana case has directly addressed the issues presented in this appeal, both Hartford and the Library rely on cases from other jurisdictions.

In *Arnold v. Cincinnati Insurance Co.,* 276 Wis.2d 762, 688 N.W.2d 708 (App. 2004), the homeowner's insurance policy at issue excluded coverage for faulty workmanship and materials, but also provided, "[h]owever, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is cov-

ered." *Id.* at 713. In interpreting this provision, the court stated, "[a] reasonable insured would understand, based both on logic and on the use of 'However' at the beginning of the sentence, that the meaning of 'ensuing' here is a loss that follows the excluded loss 'as a chance, likely, or necessary consequence' of that excluded loss." *Id.* at 716.

> Using this common meaning in the context of the faulty workmanship and faulty materials exclusions, an ensuing loss is a loss that is not directly caused by faulty workmanship or faulty materials, but nonetheless follows as a "chance, likely, or necessary consequence" of the loss caused by faulty workmanship or faulty materials.

*Id.* The court also held, "a reasonable insured would understand that, in addition to being a loss that follows as a chance, likely, or necessary consequence of the excluded loss, *an ensuing loss must result from a cause in addition to the excluded loss." Id.* (emphasis added).

Under the facts presented in *Arnold,* the court concluded that the faulty workmanship and materials exclusions excluded losses the Arnolds suffered to their home, which included deterioration of caulking, discoloration or other damage to the window and door frames, and discoloration to other parts of the exterior of the home and driveway. In addition, loss caused to the interior of the home from the use of a pressure washer was excluded under the faulty workmanship exclusion. However, the court held that "any loss caused to the interior of the house by rain in conjunction with the damaged caulking is an ensuing loss[.]" *Id.* at 719.

In *McDonald v. State Farm Fire & Casualty Co.,* 119 Wash.2d 724, 837 P.2d 1000 (1992), the homeowner's insurance policy at issue contained exclusions for foundation cracking, earth movement, and faulty workmanship and materials. Within the faulty workmanship exclusion, the policy provided: "[h]owever, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section." *Id.* at 1002. In interpreting the ensuing loss provision, the Washington Supreme Court stated:

> The clause appears in the exclusions section of the policy. Because the structure of an all-risk homeowners' insurance policy consists of a grant of coverage counterbalanced by coverage exclusions, an interpretation of provisions contained in such a policy must acknowledge this structure, which is an important objective source of meaning and intent. Given the placement of the ensuing loss clause in a policy exclusion, it is difficult to reasonably interpret the ensuing loss clause contained in the defective construction and materials exclusion to be a grant of coverage.

*Id.* at 1005. The court concluded, the "ensuing loss clause says that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." *Id.*

Hartford also relies on *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.,* 219 F.3d 501 (5th Cir.2000). In that case, during construction of a fifteen-story building, cracking in nine of the "pile caps" was discovered. The cracks were repaired, but additional and more severe cracks were later discovered resulting in a material impairment of the structural integrity to the building. Allendale Mutual denied coverage for repair of the cracks under the "all risk policy" at issue, which excluded "faulty workmanship, material, construction, or design from any cause, unless physical damage not excluded by this Policy results, in which event,

this Policy will only cover such resulting damage[.]" *Id.* at 504. The policy also excluded "settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; *unless physical damage not excluded by this Policy results, in which event, this Policy will only cover such resulting damage[.]" Id.* (emphasis added). Other than the fact that the first phrase of the Allendale Mutual policy is stated in the negative, the language is nearly identical to the language at issue in the policy before us.

Allendale Mutual asserted that the policy "does not cover foundational problems resulting from the faulty design or construction, or both, which produced the cracking," but "it would cover unrelated damages such as water damage produced by incursion through the cracks to unrelated elements such as paint or carpets." *Id.* at 506. The Fifth Circuit agreed, stating, "[t]o fall back within coverage as 'resulting physical damage,' the policy contemplates damage that is different in kind, not merely different in degree[.]" *Id.* Therefore, the court concluded, "direct harm from cracking or faulty design or construction is excluded 'unless physical damage not excluded by this Policy results,' that is, unless damage of a different kind-a kind that is not excluded-results." *Id.* "[T]he cracked foundation is the impaired structural integrity, i.e., the inability of the faulty foundation to support the structure. To put it another way, the minor damage to the foundation does not 'cause' the more severe structural impairment. The cracking is the impairment; they are synonymous." *Id.*

Finally, the court noted the "importance of an event 'extraneous' to the construction process bringing about the loss." *Id.* at 507. "All-risk insurance policies generally are viewed as 'limiting recovery to those losses in which the cause is "external to

the structure insured," as opposed to an "internal" or "inherent" defect in the item of property which is damaged.'" *Id.* (quoting Couch on Insurance 3d, § 148:59 (1998)). The court cited two cases in which a loss was covered because "although errors in workmanship contributed to the causation, the loss or damage ... resulted fortuitously from events extraneous to the construction process itself[.]" *Id.* (citing *City of Barre v. New Hampshire Ins. Co.,* 136 Vt. 484, 396 A.2d 121 (1978); *U.S. Indus. v. Aetna Cas. & Sur. Co.,* 690 F.2d 459 (5th Cir.1982)). The court then observed that no extraneous event occurred nor was the building damaged by an external force; therefore, the loss was excluded. *Id.* The Fifth Circuit's approach of requiring an extraneous event is consistent with the Wisconsin court's decision in *Arnold v. Cincinnati Insurance Co.*

The New Hampshire Supreme Court has also adopted this approach. *See Weeks v. Co–Operative Ins. Co.,* 149 N.H. 174, 817 A.2d 292 (2003). In *Weeks,* the plaintiff's property was damaged when a brick veneer wall separated from the asphalt shingle wall of the building due to faulty workmanship. *Id.* at 294. The plaintiff conceded that the cost to correct the faulty workmanship was not covered due to the exclusion in his business owner's insurance policy. The court rejected his argument that the ensuing loss exception to the exclusion reinstated coverage for the damage to his property caused by the faulty workmanship. *Id.* at 296. "Interpreting the policy in this way contravenes the explicit language of the policy and renders the negligent work exclusion meaningless, a result which we conclude is not reasonable." *Id.* at 297. The court held, "[h]ere, there was no subsequent ensuing cause of loss separate and independent from the initial excluded cause of loss, i.e., the faulty workmanship. Therefore,

we conclude that the exception to the exclusion of faulty workmanship does not apply." *Id.* at 296–97.

## II. The Library's Argument

In response to Hartford's arguments, the Library asserts, "[t]he General Exclusion in Hartford's Policy excluded coverage for Construction Activities losses (e.g., the cost of repairing defective construction work); but the Ensuing Loss Provision excepted from the Exclusion, and thus retained coverage for, any otherwise covered loss that might ensue or result from Construction Activities." Br. of Appellee at 18. Specifically, the Library contends that the applicable meaning of "ensue" is "to follow as a chance, likely, or necessary consequence." *Id.* at 27 (citation omitted). "Hence, 'a reasonable insured would understand' that a covered ensuing loss 'is a loss that follows the excluded loss 'as a chance, likely, or necessary consequence' of that excluded loss.' " *Id.* (citation omitted).

The Library contends that the General Exclusion is appropriately limited by the ensuing loss exception and without such limitation the exclusion's "scope would yield extraordinary and unexpected results, especially from the standpoint of a reasonable insured property owner." *Id.* at 10. Moreover, the Library asserts that the "ensuing loss provision limits the scope of an exclusion by breaking, for coverage purposes, the link between an excluded loss and another loss it causes. If the second loss is not excluded from coverage by any other policy provision, then it is also not excluded by the exclusion containing the ensuing loss provision." *Id.* at 12.

Finally, the Library argues that we should reject the reasoning of the *Arnold* and *Alton Ochsner Medical* courts because there is no language in the Hartford Policy requiring an ensuing loss to be only "indirectly related to the original risk." *Id.* at 29. In the alternative, the Library argues

that if an external cause combined with the excluded loss is required, that requirement is met in this case because the vibrations from the hammer caused the sand to "densify" which in turn "withdrew support from the 805 Building." *Id.* at 30.

In support of its arguments, the Library directs our attention to *Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Co.,* 794 So.2d 949 (La.Ct.App.2001). In that case, humid air penetrated the moisture barrier and condensation accumulated in a refrigerated facility built to store sweet potatoes, which caused damage to Dawson Farms' sweet potato crop. *Id.* at 950–51. Dawson Farms filed a claim under its "all risk" agribusiness policy, which was denied after the insurance company concluded that "only water damage directly resulting from the breaking or cracking of a water or steam system" was covered. *Id.* at 951. The policy also excluded losses arising out of defects in design, specifications, workmanship, and construction. *Id.*

However, that policy also provided, "[w]e will pay for resulting 'loss' caused by a Peril Insured." *Id.* at 952. Relying on this provision, the court concluded that Dawson Farms was entitled to coverage for the losses associated with the damage to the contents of the building caused by the accumulation of condensation.

> [T]he accumulation of condensation that eventually rained on the sweet potatoes is a peril insured. Paragraph C provides for the exclusion of damages caused by faulty design and construction but also states in the next sentence that Millers Mutual will pay for a resulting loss caused by a Peril Insured. The paragraph is meaningless unless the cost of repairing the poor workmanship and design is excluded from coverage while any damage resulting from it is covered.

*Id.*

The Library relies on the *Dawson Farms'* language in arguing that Hart-

ford's assertion that the ensuing loss must be causally unrelated to the construction activities is without merit. "By definition, there could never be an ensuing loss resulting from a loss excluded by the General Exclusion that is causally unrelated to losses excluded by the General Exclusion." Br. of Appellee at 19. In addition, the Library asserts, "Hartford's contention also defies the purpose of ensuing loss coverage, which is to maintain coverage when an excluded loss causes an ensuing loss that otherwise is covered by an all-risk policy." *Id.* at 20.

The Library also argues that the facts of this case are analogous to those in *Blaine Construction Corp. v. Insurance Co. of North America*, 171 F.3d 343 (6th Cir. 1999). In that case, a construction contractor sought insurance coverage under its builder's all-risk policy for the cost of replacing ceiling insulation ruined by water that had condensed within the insulation cavity after a subcontractor failed to properly install a vapor barrier. *Id.* at 345. The contractor conceded that the damage in question had been caused by faulty workmanship, but argued that an exception to the faulty workmanship exclusion applied. The exception had the "effect of reinstating coverage for loss or damage 'ensuing' from an insured peril, notwithstanding that no coverage was provided for the cost of correcting the faulty workmanship itself." *Id.* The court held that although the faulty installation of the vapor barrier was excluded under the workmanship exclusion of the policy, the property damage that ensued, i.e. water damage to the insulating material, which was an "insured peril" under the policy, was covered as an ensuing loss. *Id.* at 350, 353–54.

### III. Conclusion

In the final analysis, however, we come back to several core concepts in disputes regarding insurance coverage. The first is that an insurance policy is a contract and subject to the normal analysis accorded contractual language used in other contracts. *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind.2006) (citing *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind.1997)).

■ Secondly, all-risk insurance generally covers "fortuitous losses not resulting from misconduct or fraud, *unless the policy contains a specific provision expressly excluding the loss from coverage.*'" *Schultz v. Erie Ins. Group*, 754 N.E.2d 971, 974 (Ind.Ct.App.2001), *trans. denied* (quoting 13A George J. Couch, Couch: Cyclopedia of Insurance Law § 48:141 at 139 (2d ed.1982) (emphasis added)). *See also* Jane Massey Draper, *Coverage Under All-Risk Insurance*, 30 A.L.R. 5th 170, § 2(a) (1995) ("[U]nder all-risk policies a loss or damage arising from a fortuitous event, that is, one that is unexpected and not probable, and caused by an external force, that is, not resulting from an internal characteristic of the property, is covered under such a policy unless specifically excluded[.]").

■ The third important concept is that while ambiguities in policy language are to be resolved in favor of the insured, policy language is not ambiguous just because a dispute arises between the insured and the insurer as to its meaning. *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied.*

In the policy before us, the relevant language defines a "Covered Cause of Loss" as "loss caused by direct physical loss or damage to Covered Property within the policy period stated on the Common Policy Declarations ... [u]nless the loss is excluded in the General Exclusion or the Specific Exclusions[.]" Appellant's App. p.

272. The General Exclusion specifically excludes:

> 3. *Any of the following performed to or for* any part of land, buildings, roads, water or gas mains, sewers, drainage ditches, levees, dams, other structures or facilities, or *any Covered Property;*
>
> a. *Design, specifications, workmanship,* repair, *construction, renovation,* remodeling, grading, compaction; *or*
>
> b. *Furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship,* repair, *construction, renovation,* remodeling, grading or compaction*[.]*

\* \* \*

**Ensuing Loss Coverage:** *If physical loss or damage by a Covered Cause of Loss ensues,* we will pay only for such ensuing loss or damage.

*Id.* (emphasis added).

■ In general, "[a]n exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause." *Amerisure Inc. v. Wurster Constr. Co., Inc.,* 818 N.E.2d 998, 1005 (Ind.Ct.App. 2004) (citing *Ind. Ins. Co. v. DeZutti,* 408 N.E.2d 1275, 1280 (1980)). "In simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage." *Id.*

■ However, in the case before us, the only way that Hartford's ensuing loss provision can "re-grant" coverage, using the verb coined by the *Amerisure* court, is if the cause of the loss from which the ensuing loss arises is a "covered cause of loss." Here, it is not. In fact, it is not even a question of interpretation; the language is clear.

■ In this analysis, the concept of insurance law called the efficient proximate cause of loss rule is helpful. Several states have denominated it as such and have adhered to it in their analyses. *See e.g. State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 313 (Ala.1999); *M.L. v. Allstate Ins. Co.,* 996 P.2d 1216, 1228 (Alaska 2000); *Century Sur. Co. v. Polisso,* 139 Cal.App.4th 922, 954, 43 Cal.Rptr.3d 468 (2006); *Solimine v. Mass. Prop. Ins. Underwriting Assoc.,* 65 Mass.App.Ct. 782, 844 N.E.2d 256, 258–59 (2006); *W. Nat. Mut. Ins. Co. v. Univ. of N.D.,* 643 N.W.2d 4, 12–13 (N.D.2002); *McDonald,* 837 P.2d at 1004; *W. Va. Fire & Cas. Co. v. Mathews,* 209 W.Va. 107, 543 S.E.2d 664, 668 (2000). The Supreme Court of Washington has summarized it best:

> The efficient proximate cause rule states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage. "Stated in another fashion, where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery."

*McDonald,* 837 P.2d at 1004 (citations omitted).

Interestingly, although no known Indiana case has denominated and applied the rule expressly, the Court of Appeals of Indiana has been persuaded by analysis called for by the efficient proximate cause rule. *See Assoc. Aviation Underwriters v. George Koch Sons, Inc.,* 712 N.E.2d 1071, 1075 (Ind.Ct.App.1999).

While in the *Koch* case, coverage was found to be available under the policy in

question, that determination was made because the policy did not "clearly and unambiguously exclude coverage for third-party negligence which set[ ] into motion [the] excluded perils." *Id.* In Hartford's policy at issue in this case, the third-party negligence that set into motion the efficient proximate cause of the Library's loss is clearly and unambiguously excluded from coverage.[3] Therefore, that efficient proximate cause is not somehow miraculously covered in the ensuing loss provision. The only ambiguity arises when the policy is misread to ignore the condition precedent to coverage as an ensuing loss, namely, that the underlying loss must first be a "covered cause of loss."

We are persuaded by the analysis and reasoning of efficient proximate cause rule in the interpretation and construction in policy language and believe that it serves the end of understandable and predictable coverage in the policy at issue here and all-risk policies, in general. While ambiguous language and unusual, efficient proximate causes will always be found at the heart of subsequent disputes, under the facts and circumstances of this case, the Library's loss was a specifically excluded loss.[4]

Reversed and remanded for proceedings consistent with this opinion.

ROBB, J., and BARNES, J., concur.

**3.** The Library asserts that the policy's Control of Property provision "restricts the scope of the General Exclusion for Construction Activities, *literally* making the latter inapplicable to conduct of 'any' person beyond the Library's 'direction and control.' " Br. of Appellee at 34 (emphasis in original). We cannot agree with the Library's argument given the language of the General Exclusion which specifi-cally contemplates acts or errors caused by parties other than the insured.

**4.** The parties do not dispute that the collapse of the 805 Building was caused by the densification of the soil beneath the building, which in turn was caused by the use of the high frequency variable-moment pile driving hammer during the excavation process.