# FOR PUBLICATION



FILED
Dec 12 2014, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL H. MICHMERHUIZEN**
**ROBERT T. KEEN, JR.**
**KEVIN K. FITZHARRIS**
Barrett & McNagny LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD A. ROCAP**
**KRISTEN V. MOOREHEAD**
Rocap Musser LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CENTRAL MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1405-CT-214 |
| | ) | |
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49D05-1201-CT-1601

**December 12, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Central Mutual Insurance Company ("Central") appeals the trial court's order denying its motion for partial summary judgment and granting the motion for partial summary judgment filed by Motorists Mutual Insurance Company ("Motorists"). Central raises one issue which we revise and restate as whether the court erred in entering partial summary judgment in favor of Motorists. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 5, 2011, Alvin Pilotte was injured in a motor vehicle collision allegedly caused by the negligence of Bobby Scotten. At the time of the collision, Pilotte was operating a truck owned by Kenworth of Indianapolis, Inc., ("Kenworth") with Kenworth's permission and in the course of his employment with Wampler's Services, Inc. ("Wampler"). Central insured Kenworth under "Commercial Garage Policy, Policy No. 8629727" (the "Central Policy"). Appellant's Appendix at 213. Kenworth had no other garage or automobile policies in effect on that date. Motorists insured Wampler under an "automobile liability policy, Policy No. 6035-33-276122-80E" (the "Motorists Policy"). Id. at 215. Both the Central Policy and the Motorists Policy provide underinsured motorist coverage with limits of $1,000,000. The Central Policy provides that its coverage is primary, and the Motorists Policy provides that its coverage is excess.

On April 27, 2013, Pilotte filed an amended complaint for damages against Scotten, Motorists, and Central. On May 2, 2013, Motorists filed an Answer, Amended Complaint for Declaratory Judgment and Crossclaim against Scotten. Motorists requested that the court issue a declaration as to the priority between the Central Policy and the Motorists Policy.

2

On May 15, 2013, Central filed its answer and alleged as an affirmative defense that its policy issued to Kenworth was a "garage liability policy" as defined in Ind. Code § 27-8-9-6(b) and requested that the court issue a judgment declaring that the Motorists Policy issued to Wampler provides primary underinsured motorist coverage to Pilotte and that no recovery may be made under the Central Policy until the limits of all coverage available to Pilotte under the Motorists Policy had been exhausted.

On October 1, 2013, Central filed a motion for partial summary judgment and argued that the Central Policy was excess to the underinsured motorist coverage afforded to Pilotte under the Motorists Policy. On December 12, 2013, Motorists filed a response and cross-motion for partial summary judgment requesting that the court declare that the Motorists Policy "is in an excess position to the [Central] Policy with regard to" Pilotte's claims. Id. at 247.

On March 10, 2014, the court held a hearing on the motions for partial summary judgment.[1] On March 21, 2014, the court denied Central's motion for partial summary judgment and granted Motorists' motion for partial summary judgment. The court stated that Motorists designated sufficient evidence demonstrating the absence of genuine issues of material fact "that the [Central] Policy shall provide primary coverage to [Pilotte] in this matter, and the [Motorists] Policy shall provide excess coverage, only when the limits of the [Central] Policy have been reached, and therefore, [Motorists] is entitled to judgment as a matter of law." Id. at 10.

---

[1] The record does not contain a transcript of the hearing.

On April 21, 2014, Central filed a motion to certify the court's March 21, 2014 order. On May 12, 2014, the court granted Central's motion. On May 15, 2014, Central filed a motion for an interlocutory appeal, and this court granted the motion to accept jurisdiction.

DISCUSSION

The issue is whether the trial court erred in entering partial summary judgment in favor of Motorists. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), trans. denied. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

4

Central argues that Ind. Code § 27-8-9-10, the Garage Liability Statute, governs and provides that recovery under the Central Policy may not be made until the limits of all coverage available to Pilotte as a permittee have been exhausted. Central asserts that this conclusion is not changed by the fact that the Central Policy provides that its coverage is primary and the Motorists Policy provides that its coverage is excess because contractual provisions which are in contravention of statute are unenforceable. Central asserts that had the legislature intended that the terms of the statute could be contradicted by the terms of the applicable insurance policies, it could have provided as much. Central also asserts that the statute is mandatory and not discretionary.

Motorists asserts that the application of the Garage Liability Statute in the context of two non-conflicting policies that clearly establish the priority of those policies is a matter of first impression and that Indiana Courts have had the opportunity to construe other provisions of the Indiana Motor Vehicle Primary Insurance Coverage Act, including Indiana's Owner's Statute, Ind. Code § 27-8-9-7, and Indiana's Lease Statute, Ind. Code § 27-8-9-9. Motorists argues the Garage Liability Statute is discretionary and that "[t]he facts of this matter do not present circumstances necessitating application of the Indiana Garage Liability Statute, but rather, clear cut complementary policy provisions that render the Indiana Garage Liability inapplicable." Appellee's Brief at 15-16. Motorists asserts that a logical reading of the two policies together provides that Central will provide primary coverage, and only after the limits of the Central Policy have been exhausted will coverage under the Motorists Policy be available to claims against the Motorists Policy. In its reply

brief, Central contends that Motorists asks this court to modify the Garage Liability Statute to limit its application.

This case requires that we interpret the insurance policies and the relevant statutes. A contract for insurance is subject to the same rules of interpretation as other contracts. USA Life One Ins. Co. of Ind. v. Nuckolls, 682 N.E.2d 534, 537-538 (Ind. 1997). Thus, if the language in the insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. Id. at 538. However, if the language of the policy is ambiguous, we may apply the rules of construction in interpreting the language. Id. When an insurance policy contains an ambiguity, it should be strictly construed against the insurance company. Id. A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." Id.

"Generally, an insurer has the right to limit its coverage of risks and its liability, and in so doing may impose exceptions, conditions, and exclusions upon its contractual obligations that are not inconsistent with public policy." Balagtas v. Bishop, 910 N.E.2d 789, 795 (Ind. Ct. App. 2009) (quoting Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co., 775 N.E.2d 1198, 1206 (Ind. Ct. App. 2002)), trans. denied. "A contract will be declared void when it actually contravenes a statute." Id. (quoting Am. Family Mut. Ins. Co., 775 N.E.2d at 1206). Unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect. Westfield Companies v. Knapp, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citing Miller v. Geels, 643 N.E.2d 922, 928 (Ind. Ct. App. 1994), trans. denied), reh'g denied, trans. denied.

When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind. 2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. Id. A statute is unambiguous if it is not susceptible to more than one interpretation. Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Bolin, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. Id. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. Mayes v. Second Injury Fund, 888 N.E.2d 773, 776 (Ind. 2008).

Indiana's Garage Liability Statute, Ind. Code § 27-8-9-10, is titled "Garage liability policy as owner's only coverage; permittee's coverage primary" and provides:

    (a)    This section applies if the only motor vehicle insurance coverage provided by the owner of the motor vehicle is under a garage liability policy.

    (b)    Notwithstanding section 7 of this chapter, any coverage available to the permittee is primary.

    (c)    Recovery may not be made under the garage liability policy until the limits of all coverage available to the permittee have been exhausted.

Ind. Code § 27-8-9-6(b) defines a "[g]arage liability policy" as:

any motor vehicle liability insurance policy that affords coverage to a named insured engaged in the business of selling, leasing, repairing, servicing, delivering, testing, road testing, parking, or storing motor vehicles, but does not refer to a motor vehicle liability insurance policy that affords coverage to a vehicle used in the business of transporting property for hire.

7

"'Motor vehicle insurance coverage' means any type of insurance coverage described in IC 27-1-5-1, Class 2(f)." Ind. Code § 27-8-9-6(c). Ind. Code § 27-1-5-1(f), under "CLASS 2," describes insurance coverage "[t]o insure against any loss, expense and/or liability resulting from the ownership, maintenance, use and/or operation of any automobile or other motor vehicle, including complete line coverage on automobiles or other motor vehicles . . . ." "'Permittee' means any person who is granted permission to operate a motor vehicle by the owner of the motor vehicle." Ind. Code § 27-8-9-6(d). Motorists does not contradict Central's assertion that the Central Policy constitutes a garage liability policy or that Pilotte was a permittee.

We observe that this court has previously commented on the purpose of the Garage Liability Statute. In Gen. Acc. Ins. Co. of Am. v. Hughes, we held:

> . . . I.C. 27-8-9-10, enacted in 1993, . . . seeks to resolve the dilemma of the "circular riddle" as discussed in Indiana Ins. Co. v. American Underwriters, Inc. (1973) 261 Ind. 401, 304 N.E.2d 783, 787 and Indiana Ins. Co. v. Federated Mut. Ins. (1981) Ind. App., 415 N.E.2d 80, 83-86, reh'g denied. The "circular riddle" develops when two or more insurance policies each contain an "other insurance" clause which forces examination or application of the opposing policy's provisions prior to affording coverage under its own terms. Our supreme court in American Underwriters solved the problem by holding that conflicting "other insurance" clauses "are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability." American Underwriters, supra at 787 (emphasis in original). In short, Indiana courts previously resolved the "circular riddle" by finding the conflicting clauses mutually repugnant, disregarding them and prorating the insurance coverage between the policies.

706 N.E.2d 208, 212 n.6 (Ind. Ct. App. 1999), trans. denied.

The Central Policy is titled "COMMERCIAL GARAGE POLICY." Appellant's Appendix at 56. Under the "Direct Coverage Options," the option for "Primary Insurance" is marked with an "X" and states: "If this box is checked, Garagekeepers Coverage is changed to apply without regard to your or any other 'insured's' legal liability for 'loss' to a 'customer's auto' and is primary insurance."[2] Id. at 97. Central acknowledges that the Central Policy provides that its coverage is primary and points to an endorsement titled "Indiana Underinsured Motorists Coverage," which states:

> The Conditions are changed for Underinsured Motorists Coverage as follows:
>
> 1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is replaced by the following:
>
>    If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply.
>
>    **First Priority**
>    The Uninsured Motorists Coverage Applicable to the vehicle the "insured" was "occupying" at the time of the "accident."
>
>    **Second Priority**
>    Any other Coverage Form or policy affording Uninsured Motorists Coverage to the "insured."
>
>    a.   Where there is no applicable insurance available under the First Priority, the maximum recovery under all coverage forms or policies in the Second Priority shall

---

[2] The box for the other option, "Excess Insurance," was not checked, and the Central Policy stated: "If this box is checked, Garagekeeprs [sic] Coverage remains applicable on a legal liability basis. However, coverage also applies without regard to your or any other 'insured's' legal liability for 'loss' to a 'customer's auto' on an excess basis over any other collectible insurance regardless of whether the other insurance covers your or any other 'insured's' interest or the interest of the 'customer's auto's' owner." Appellant's Appendix at 97.

9

not exceed the highest applicable limit of any one vehicle under any one coverage form or policy.

**b.** Where there is applicable insurance available under the First Priority:

**1)** The limit of insurance under the vehicle the "insured" was "occupying" under the coverage form or policy in the First Priority shall first be exhausted; and

**2)** The maximum recovery under all coverage forms or policies in the Second Priority shall not exceed the highest applicable limit for any one vehicle under any one coverage form or policy.

**c.** We will pay only our share of the "loss." Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

Id. at 135-136.

Central also acknowledges that the Motorists Policy provides that its coverage is excess. The Motorists Policy provides:

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

* * * * *

1. OTHER INSURANCE in the Business Auto and Garage Coverage Forms is replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible

10

uninsured or underinsured motorists insurance providing coverage on a primary basis.

       c.      If this coverage under this coverage form is provided:

          (1)      On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

          (2)      On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

Id. at 48-49.

We have previously interpreted Indiana's Owner's Statute and Lease Statute, which are also included in Ind. Code Chapter 27-8-9 which is titled "Primary Motor Vehicle Insurance Coverage." In Monroe Guaranty Ins. Co. v. Langreck, 816 N.E.2d 485, 496 (Ind. Ct. App. 2004), the court examined the Owner's Statute, Ind. Code § 27-8-9-7, which at the time provided:

       (b)     In any case arising from a permittee's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance coverage is considered primary if both of the following apply:

          (1)     The vehicle, at the time damage occurred, was operated with the permission of the owner of the motor vehicle.
          (2)     The use was within the scope of the permission granted.

11

(c)     The permittee may not recover under any other motor vehicle insurance coverage available to the permittee until the limit of all coverage provided by the owner's policy is first exhausted.[3]

The court concluded that including umbrella insurance policies within the definition of "motor vehicle insurance coverage" for purposes of the Owner's Statute was not required by the evident legislative intent behind the statute, and indeed would lead to an absurd result contrary to the expectations of those issuing and purchasing umbrella insurance policies. 816 N.E.2d at 498. The court relied in part upon the differences between umbrella and primary policies and the expectations of insurers and insureds with respect to umbrella policies in particular. Id. The court stated:

> It is clear the legislature in enacting the Owner's Statute wished to simplify coverage disputes where competing primary insurers have conflicting "other insurance" clauses that threaten to leave an injured party without access to insurance coverage for an accident. We do not think the statute was intended to force an umbrella insurer to pay ahead of a primary insurer, especially

---

[3] Ind. Code § 27-8-9-7 was subsequently amended in 2009 and 2010 and currently provides:

(a)     This section does not apply to cases covered by section 10 or 11 of this chapter.
(b)     In any case arising from a permittee's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance coverage is considered primary if both of the following apply:

    (1)     The vehicle, at the time damage occurred, was operated with the permission of the owner of the motor vehicle.
    (2)     The use was within the scope of the permission granted.

(c)     The permittee may not recover under any other motor vehicle insurance coverage available to the permittee until the limit of all coverage provided by the owner's policy is first exhausted.
(d)     In a case arising from an owner's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance policy is considered primary for any claim made by a passenger in the motor vehicle.
(e)     A passenger in a motor vehicle at the time a case described in subsection (b) or (d) arises may not recover under any other motor vehicle insurance coverage available to the passenger until the limit of all coverage available to the passenger under the owner's motor vehicle insurance policy is first exhausted.

12

where, as here, the primary insurer is expressly listed as underlying insurance in the umbrella insurer's policy.

Id. at 498. The court concluded that one insurer's "overall primary policy remains primary and [another insurer's] true excess or umbrella policy is secondary, in accordance with black-letter law adopted in numerous jurisdictions and notwithstanding the Indiana Owner's Statute." Id. at 499.

In Old Republic Ins. Co. v. RLI Ins. Co., 887 N.E.2d 1003, 1004 (Ind. Ct. App. 2008), reh'g denied, trans. denied, the court addressed whether Ind. Code § 27-8-9-9, Indiana's Lease Statute, may be applied to determine the priority of insurance coverage between a primary insurance policy and true excess policies. Ind. Code § 27-8-9-9 provided:

(a)     When a claim arises from the operation of a motor vehicle leased under a written lease agreement, if under the agreement the lessee agrees to provide coverage for damage resulting from his operation of the vehicle, then the motor vehicle insurance coverage of the lessee is primary. No claim may be made against any coverage available for the vehicle by the lessor until the limits of the motor vehicle insurance coverage provided by the lessee for the vehicle are exhausted.

(b)     When a claim arises from the operation of a motor vehicle that is used in the business of transporting property for hire and leased under a written lease agreement, if under the agreement the lessor and lessee agree as to which coverage of the parties' motor vehicle insurance is primary coverage, then the policy of insurance providing that coverage is primary and no claim may be made against any other coverage for the vehicle until the limits of that policy are exhausted.

The court observed that whether Indiana's Lease Statute applies only between insurance policies on the same level was a question of first impression, and observed that Indiana's Owner's Statute and Lease Statute are *in pari materia* and are both part of Indiana's

13

Primary Motor Vehicle Insurance Coverage Act. Id. at 1008, 1010. The court held that "[t]hey each provide statutory tiebreakers for determining the priority of insurance coverage in circumstances where the priority of coverage might not otherwise be immediately clear." Id. The court noted that the only difference of note between the statutes is "the circumstances to which they apply: application of Ind. Code Section 27-8-9-7 requires a permittee's use of an automobile, and application of Section 27-8-9-9 requires the operation of a leased motor vehicle." Id. at 1010-1011.

The court was not persuaded that that difference was significant or sufficient to "ignore our holding in Monroe Guaranty that, 'in coverage priority disputes between a primary insurer that purports to be excess in limited circumstances and an insurer who issues a true excess or umbrella liability policy, the umbrella policy is always excess to the essentially primary policy.'" Id. at 1011 (quoting Monroe Guaranty, 816 N.E.2d at 498). The court concluded that "because we endeavor to read different provisions of the Indiana Code harmoniously, we hold that Indiana's Lease Statute, like Indiana's Owner's Statute, applies only to determine priority between insurance policies providing the same level of coverage." Id. The court held that the Old Republic Policy provided primary coverage, while the RLI Excess Policy, the ISOP Umbrella Policy, and the First Specialty Excess Policy each offered true excess coverage, and, thus, the Lease Statute could not be applied to prioritize the Excess Insurers' policies ahead of the Old Republic Policy. Id. at 1012.

We agree with the analysis in Old Republic Ins. Co. and Langreck, and hold that Indiana's Garage Liability Statute, like Indiana's Lease Statute and Owner's Statute, applies only to determine priority of coverages between insurance policies providing the

14

same level of coverage. The Motorists Policy clearly states, and Central concedes, that its coverage is excess. Central also concedes that the Central Policy provides that its coverage is primary. Thus, we cannot say that both policies provided the same level of coverage or that a riddle has been presented which Ind. Code § 27-8-9-10 was intended to solve. Accordingly, we cannot say that the trial court erred in entering summary judgment in favor of Motorists.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of Motorists' motion for summary judgment.

Affirmed.

BRADFORD, J., concurs.

BARNES, J., concurs in result with separate opinion.

**IN THE**
**COURT OF APPEALS OF INDIANA**

CENTRAL MUTUAL INSURANCE )
COMPANY, )
 )
    Appellant, )
 )
       vs. ) No. 49A04-1405-CT-214
 )
MOTORISTS MUTUAL INSURANCE )
COMPANY, )
 )
    Appellee. )

**BARNES, Judge, concurring in result.**

I fully concur in the result reached by my colleagues. However, I reach that result differently.

Primarily, unlike my colleagues, I do not place much reliance upon our decisions in Langreck and Old Republic. Those cases dealt specifically with the fundamental difference between true excess or umbrella insurance policies versus primary insurance policies that purport to be excess in limited situations. In Langreck, we discussed at length the particular hallmarks of umbrella insurance policies and how they differ from primary liability

16

policies. See Langreck, 816 N.E.2d at 494-96. Ultimately, we held that, "in coverage priority disputes between a primary insurer that purports to be excess in limited circumstances and an insurer who issues a true excess or umbrella liability policy, the umbrella policy is always excess to the essentially primary policy," regardless of statutory priority provisions for automobile liability policies. Id. at 498. Here, neither policy at issue is an umbrella policy. Both policies are essentially primary policies with limited "other insurance" or excess coverage clauses.

Central does not deny that, by virtue of the plain and unambiguous language in both its policy and Motorists' policy, Central's policy provides primary underinsured motorists coverage to Pilotte while Motorists' policy only provides excess underinsured motorists coverage. There is no conflict between the terms of the policies. Central wants to be saved from the result of its own policy drafting by the Garage Liability Statute, claiming that the statute requires its coverage to be excess only. It cites cases for the proposition that insurance policies cannot violate statute. I note that in Westfield Companies v. Knapp, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004), trans. denied, we said, "Unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect." Also, it is clear to me that the primary purpose of our insurance laws is to protect the public, given "the frequently unequal bargaining power between insurance companies and insureds." Justice v. Am. Family Mut. Ins. Co., 4 N.E.3d 1171, 1176 (Ind. 2014). Insurers are permitted to limit their liability in any manner consistent with public objectives expressed in state statutes. Id. I do not believe such statutes can be used to correct an insurance company's drafting

17

that possibly <u>expanded</u> their liability beyond the minimum required by statute. To the contrary, the general rule appears to be, "Insurance companies and insureds may contract for coverage in excess of the coverage required by particular statutes, particularly when the statutory provision is for the benefit of the insured, and by providing such broader coverage the policy does not violate public policy." 44 C.J.S. Insurance § 474, p. 585 (2007) (citing <u>Standard Mut. Ins. Co. v. Pavelka</u>, 580 F. Supp. 224 (S.D. Ind. 1983) (applying Indiana law)).

Although Central's policy is labeled a "garage" policy, it is unambiguously written in such a way to provide primary underinsured motorist coverage to Pilotte under the facts here. Presumably, Central knew what it was doing when it wrote its policy in that way and charged Kenworth premiums accordingly. Conversely, Motorists' policy unambiguously provides only excess coverage to Pilotte, and so that coverage is not "available" to him under the language of the Garage Liability Statute until Central's policy is exhausted. As such, I join the majority in voting to affirm the trial court's granting of Motorists' partial summary judgment motion.